# EXHIBIT F

# UNITED STATES
# DEPARTMENT OF THE INTERIOR
# MINERALS MANAGEMENT SERVICE

## MINERAL LEASE OF SUBMERGED LANDS UNDER THE OUTER CONTINENTAL SHELF LANDS ACT

This form does not constitute an information collection as defined by 44 U.S.C. 3502 and, therefore, does not require approval by the Office of Management and Budget.

| Office | Serial Number |
|---|---|
| Cash Bonus | Annual rental Dollars - Dollars/block-acre-hectare or fraction thereof |
| Minimum royalty- Dollars/year Dollars/block-acre-hectare or fraction thereof | Royalty rate Dollars/unit of product    % amount or value of product    % gross proceeds |

This lease is effective as of _____ (hereinafter called the "Effective Date") and shall continue for an initial period of _____ years (hereinafter called the "Initial Period") by and between the United States of America (hereinafter called the "Lessor"), by the Minerals Management Service, its authorized officer, and

(hereinafter called the "Lessee"). In consideration of any cash payment heretofore made by the Lessee to the Lessor and in consideration of the promises, terms, conditions, and covenants contained herein, including the Stipulation(s) numbered _____ attached hereto, the Lessee and Lessor agree as follows:

**Sec. 1. Statutes and Regulations.** This lease is issued pursuant to the Outer Continental Shelf (OCS) Lands Act of August 7, 1953, as amended (43 U.S.C. 1331-1356), (hereinafter called the "Act"), and the regulations issued thereunder (30 CFR 281). This lease is issued subject to the Act, all regulations and orders issued pursuant to the Act and in existence upon the Effective Date of this lease, all regulations and orders, subsequently issued pursuant to the Act, that provide for the prevention of waste and conservation of the natural resources of the OCS and the protection of correlative rights therein, and all other applicable statutes and regulations.

**Sec. 2. Rights of Lessee.** The Lessor hereby grants and leases to the Lessee the exclusive right and privilege to prospect for, mine, extract, remove, and dispose of all _____ (hereinafter referred to as the "Leased Mineral(s)") in the submerged lands of the OCS containing approximately _____ acres or _____ hectares (hereinafter referred to as the "Leased Area"), described as follows:

These rights include:

(a) the nonexclusive right to conduct within the Leased Area geological and geophysical explorations including core sampling activities in accordance with applicable regulations;

(b) the nonexclusive right to drill water wells within the Leased Area, unless the water is part of geopressured-geothermal and associated resources, and to use the water produced therefrom for operations pursuant to the Act free of cost, on the condition that the drilling is conducted in accordance with procedures approved by the Director of the Minerals Management Service or the Director's delegate (hereinafter called the "Director"); and

(c) the right to construct or erect and to maintain within the Leased Area artificial islands, equipment, installations, and other devices permanently or temporarily attached to the seabed and other works and structures necessary to the full enjoyment of the lease, subject to compliance with applicable laws and regulations.

**Sec. 3. Term.** This lease shall continue from the Effective Date of the lease for the Initial Period and so long thereafter as the Leased Mineral is produced (sold, transferred, used, or otherwise disposed of) from the Leased Area in accordance with an approved mining operation, or the Lessee is otherwise in compliance with provisions of the lease and the regulations under which the Lessee can earn continuance of the lease.

**Sec. 4. Rental.**

(a) The Lessee shall pay the Lessor an annual rental in the amount shown on the face of the lease or in accordance with the rental adjustment schedule (attached, if applicable) pursuant to the leasing notice not later than the last day prior to the commencement of the rental year.

(b) Unless otherwise specified in the leasing notice, the lessee is exempt from paying annual rental during the first 5 years in the life of the lease.

(c) No rental shall be due or payable under a lease commencing with the first lease anniversary date following the commencement of royalty payments on leasehold production.

**Sec. 5. Royalty on Production.** The royalty due the Lessor on Leased Mineral(s) produced (sold, transferred, used, or otherwise disposed of) shall be as specified in the schedule attached to this lease.

**Sec. 6. Minimum Royalty.** The Lessee shall pay the Lessor a minimum annual royalty in the amount specified on the face of the lease, beginning with the year in which OCS minerals are produced (sold, transferred, used, or otherwise disposed of) from the leasehold. The minimum royalty prescribed shall be offset by royalty paid on production during the lease year. Minimum royalty payments are payable within 30 days following the end of the lease year for which they are due.

**Sec. 7. Payments.** The Lessee shall identify one responsible party who shall make all payments (rentals, royalties, and any other payments required by this lease) to the Lessor by electronic transfer of funds, check, draft on a solvent bank, or money order unless otherwise provided by regulations or by direction of the Lessor. Rentals, royalties, and any other payments required by this lease shall be made payable to the Minerals Management Service and tendered to the Director in accordance with applicable regulations. Determinations made by the Lessor as to the amount of payment due shall be presumed to be correct and paid as due.

**Sec. 8. Bonds.** The Lessee shall maintain the bond(s) coverage required by regulation prior to the commencement of any activity on the lease and shall furnish such additional security as may be required by the Lessor if, after operations have begun, the Lessor deems such additional security to be necessary.

**Sec. 9. Plans.** The Lessee shall conduct all operations on the Leased Area in accordance with the provisions of an approved delineation, testing, or mining plan, this lease, and the applicable governing regulations. Modifications to approved plans should submitted by the Lessee to the Lessor and must be authorized as provided for under applicable regulations.

**Sec. 10. Performance.** The Lessee shall comply with all applicable regulations, orders, written instructions and the terms and conditions set forth in this lease. After due notice in writing, the Lessee shall conduct such OCS mining activities at such rates as the Lessor may require in order that the Leased Area or any part thereof may be properly and timely developed and produced in accordance with sound operating principles.

**Sec. 11. Safety Requirements.** The Lessee shall:

(a) maintain all places of employment within the Leased Area in compliance with occupational safety and health standards and, in addition, free from recognized hazards to employees of the Lessee or of a contractor or subcontractor operating within the Leased Area;

(b) maintain all operations within the Leased Area in compliance with regulations or orders intended to protect persons, property, and the environment, including mineral deposits and formations of mineral deposits not leased hereunder; and

(c) allow prompt access, at the site of any operation subject to safety regulations, to any authorized Federal inspector and shall provide any documents and records that are pertinent to occupational or public health, safety, or environmental protection as may be requested.

**Sec. 12. Suspension and Cancellation.**

(a) The Lessor may suspend or cancel this lease pursuant to Section 5 of the Act, and compensation shall be paid provided by the Act.

(b) The Lessor may, upon recommendation of the Secretary of Defense during a state of war or national emergency declared by Congress or the President of the United States, suspend operations under the lease, as provided in Section 12(c) of the Act, and just compensation shall be paid the Lessee for such suspension.

**Sec. 13. Indemnification.** The Lessee shall indemnify the Lessor for and hold it harmless from, any claim, including claims for loss or damage to property or injury to persons caused by or resulting from any operation on the Leased Area conducted by or on behalf of the Lessee. However, the Lessee shall not be held responsible to the Lessor under this section for any loss, damage, or injury caused by or resulting from: .

(a) negligence of the Lessor other than the commission or omission of a discretionary function or duty on the part of a Federal Agency, whether or not the discretion involved is abused; or

(b) the Lessee's compliance with an order or directive of the Lessor against which an administrative appeal by the Lessee is filed before the cause of action from the claim arises and is pursued diligently thereafter.

**Sec. 14. Purchase of Production.** In time of war or when the President of the United States shall so prescribe, the Lessor shall have the right of first refusal to purchase at the market price all or any portion of the Leased Mineral produced from the Leased Area, as provided in Section 12(b) of the Act.

**Sec. 15. Mining Unit Agreement.** The Lessee may request to operate under a mining unit agreement within such time as the Lessor may prescribe, embracing all or part of the lands subject this lease as the Lessor may determine is in the interest of conservation of the natural resources of the OCS or the prevention of waste. Where any provision of a mining unit agreement,

approved by the Lessor, is inconsistent with a provision of this lease, the provision of the agreement shall govern so long as the lease remains committed to the mining unit. If the mining unit of which this lease is a part is dissolved, the lease shall then be subject to the lease terms that would have been applied if the lease had not been included in the mining unit.

**Sec. 16. Equal Opportunity Clause.** During the performance of this lease, the Lessee shall fully comply with paragraphs (1) through (7) of Section 202 of Executive Order 11246, as amended (reprinted in 41 CFR 60-1.4(a)), and the implementing regulations that are for the purpose of preventing employment discrimination against persons on the basis of race, color, religion, sex, national origin, age, or disability. Paragraphs (1) through (7) of Section 202 of Executive Order 11246, as amended, are incorporated in this lease by reference.

**Sec. 17. Certification of Nonsegregated Facilities.** By entering into this lease, the Lessee certifies, as specified in 41 CFR 60-1.8, that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. As used in this certification, the term "segregated facilities" means, but is not limited to, any waiting rooms, work areas, rest rooms and washrooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees that are segregated by explicit directive or are, in fact, segregated on the basis of race, color, religion, sex, national origin, age, or disability, because of habit, local custom, or otherwise. The Lessee further agrees that it will obtain identical certifications from proposed contractors and subcontractors prior to award of contracts or subcontracts, unless they are exempt under 41 CFR 60-1.5.

**Sec. 18. Reservations to Lessor.** All rights in the Leased Area not expressly granted to the Lessee by the Act, the regulations, or this lease are hereby reserved to the Lessor. Without limiting the generality of the foregoing, reserved rights include:
(a) the rights to all source materials essential to production of fissionable materials as specified under 43 U.S.C. 1341(e);
(b) the right to authorize geological and geophysical exploration in the Leased Area that does not unreasonably interfere with or endanger actual operations under the lease, and the right to grant such easements or rights-of-way upon, through, or in the Leased Area as may be necessary or appropriate to the working of other lands that may or may not be leased or to the treatment and shipment of products thereof by or under authority of the Lessor;
(c) the right to grant leases for any minerals (including oil, gas, and sulphur) other than the Leased Mineral(s), except that operations under such leases shall not unreasonably interfere with or endanger operations under this lease; and
(d) the right, as provided in Section 12(d) of the Act, to restrict operations in the Leased Area or any part thereof that may be designated by the Secretary of Defense, with approval of the President, as being within an area needed for national defense and, so long as such designation remains in effect, no operations may be conducted on the surface of the Leased Area or the part thereof included within the designation except with the concurrence of the Secretary of Defense. If operations or production under this lease within any designated area are suspended pursuant to this paragraph, any payments of rentals and royalty prescribed by this lease likewise shall be suspended during such period of suspension of operations and production, the term of this lease shall be

extended by adding thereto any such suspension period, and the Lessor shall be liable to the Lessee for such compensation as is required to be paid under the Constitution of the United States.

**Sec. 19. Transfer of Lease.** The Lessee shall file for approval with the appropriate field office of the Minerals Management Service any instrument of assignment or other transfer of this lease, or any interest therein, in accordance with applicable laws and regulations.

**Sec. 20. Surrender of Lease.** The Lessee may surrender this entire lease or any officially designated subdivision of the Leased Area by filing with the appropriate field office of the Minerals Management Service a written relinquishment, in triplicate, that shall be effective as of the date of filing. No surrender of this lease or any portion of the Leased Area shall relieve the Lessee or its surety of the obligation to pay all accrued rentals, royalties, and other financial obligations or to abandon all operations and remove all facilities on the area to be surrendered in a manner satisfactory to the Director.

**Sec. 21. Removal of Property on Termination of Lease.** Within a period of 1 year after termination of this lease in whole or in part, the Lessee shall remove all devices, works, and structures from the premises no longer subject to the lease, in accordance with applicable regulations and orders of the Director. However, the Lessee may, with the approval of the Director, continue to maintain devices, works, and structures on the Leased Area for operations on other leases, provided the Lessee continues to maintain the level of bond coverage required by the Director.

**Sec. 22. Remedies in Case of Default.**
(a) Whenever the Lessee fails to comply with any of the provisions of the Act, the regulations or orders issued pursuant to the Act, or the terms of this lease, the lease shall be subject to cancellation in accordance with the provisions of Section 5(c) and (d) of the Act and the Lessor may exercise any other remedies which the Lessor may have, including the penalty provisions of Section 24 of the Act. Furthermore, pursuant to Section 8(o) of the Act, the Lessor may cancel the lease if it is obtained by fraud or misrepresentation.
(b) Nonenforcement by the Lessor of a remedy for any particular violation of the provisions of the Act, the regulations or orders issued pursuant to the Act, or the terms of this lease shall not prevent the cancellation of this lease or the exercise of any other remedies under paragraph (a) of this section for any other violation or for the same violation occurring at any other time.

**Sec. 23. Heirs and Successors in Interest.** Each obligation hereunder shall extend to be binding upon and every benefit hereof shall inure to the heirs or devisees.

**Sec. 24. Unlawful Interest.** No member of or delegate to Congress, or Resident Commissioner, after election or appointment, or either before or after they have qualified, and during their continuance in office, and no officer, agent, or employee of the Department of the Interior, except as provided in 43 CFR Part 20, shall be admitted to any share or part in this lease or derive any benefit that may arise therefrom. The provisions of Section 3741 of the Revised Statutes, as amended, 41 U.S.C. 22, and the Act of June 25, 1948, 62 Stat. 702, as amended, 18 U.S.C. 431-433, relating to contracts made or entered into or accepted by or on behalf of the United States, form a part of this lease insofar as they may be applicable.

_____
(Lessee)

_____
(Signature of Authorized Officer)

_____
(Name of Signatory)

_____
(Title)

_____
(Date)

_____
(Address of Lessee)

_____
(Lessee)

_____
(Signature of Authorized Officer)

_____
(Name of Signatory)

_____
(Title)

_____
(Date)

_____
(Address of Lessee)

_____
(Lessee)

_____
(Signature of Authorized Officer)

_____
(Name of Signatory)

_____
(Title)

_____
(Date)

_____
(Address of Lessee)

_____
(Lessee)

_____
(Signature of Authorized Officer)

_____
(Name of Signatory)

_____
(Title)

_____
(Date)

_____
(Address of Lessee)

If this lease is executed by a corporation, it must bear the corporate seal.

_____

(Lessee)

THE UNITED STATES OF AMERICA, Lessor

_____

(Signature of Authorized Officer)

_____

(Signature of Authorized Officer)

_____

(Name of Signatory)

_____

(Name of Signatory)

_____

(Title)

_____

(Title)

_____

(Date)

_____

(Date)

_____

(Address of Lessee)

If this lease is executed by a corporation, it must bear the corporate seal.