1   CITY OF OAKLAND
    BARBARA J. PARKER, State Bar #069722
2   City Attorney
    MARIA BEE, State Bar #167716
3   Special Counsel
    ERIN BERNSTEIN, State Bar #231539
4   Supervising Deputy City Attorney
    MALIA MCPHERSON, State Bar #313918
5   Attorney
    One Frank H. Ogawa Plaza, 6th Floor
6   Oakland, California 94612
    Tel.: (510) 238-3601
7   Fax: (510) 238-6500
    Email: ebernstein@oaklandcityattorney.org
8
    Attorneys for Plaintiffs
9   CITY OF OAKLAND and
    PEOPLE OF THE STATE OF
10  CALIFORNIA,
    acting by and through the Oakland City
11  Attorney BARBARA J. PARKER
    [Other Counsel Listed on Signature Page]
12

CITY AND COUNTY OF SAN
FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar
#240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone: (415) 554-4748
Facsimile: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for Plaintiffs*

CITY AND COUNTY OF SAN
FRANCISCO and PEOPLE OF THE
STATE OF CALIFORNIA, acting by and
through the San Francisco City Attorney
DENNIS J. HERRERA
[Other Counsel Listed on Signature Page]

13
14

15          UNITED STATES DISTRICT COURT

16          NORTHERN DISTRICT OF CALIFORNIA

17          SAN FRANCISCO DIVISION

18
CITY OF OAKLAND, a Municipal              Case No.: 3:17-cv-06011-WHA
19  Corporation, and THE PEOPLE OF THE
    STATE OF CALIFORNIA, acting by and    **PLAINTIFFS' RESPONSE TO**
20  through the Oakland City Attorney,    **UNITED STATES' AMICUS BRIEF**

21                          Plaintiffs,
                                          Hearing Date: May 24, 2018
22      v.                                Hearing Time: 8:00 a.m.
                                          Courtroom 12 (19th floor)
23  BP P.L.C., a public limited company of England   Judge: Hon. William Alsup
    and Wales, CHEVRON CORPORATION, a
24  Delaware corporation, CONOCOPHILLIPS, a
    Delaware corporation, EXXON MOBIL
25  CORPORATION, a New Jersey corporation,
    ROYAL DUTCH SHELL PLC, a public limited
26  company of England and Wales, and DOES 1
    through 10,
27
                          Defendants.
28

| | |
|---|---|
| CHEVRON CORP., | Case No.: 3:17-cv-06012-WHA |
| Third Party Plaintiff, | |
| v. | **PLAINTIFFS' RESPONSE TO UNITED STATES' AMICUS BRIEF** |
| STATOIL ASA, | |
| Third Party Defendant. | Hearing Date:  May 24, 2018 |
| | Hearing Time:  8:00 a.m. |
| | Courtroom  12 (19th floor) |
| | Judge:  Hon. William Alsup |

CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Francisco City Attorney DENNIS J. HERRERA,

                              Plaintiffs,

      v.

BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,

                              Defendants

CHEVRON CORP.,

                        Third Party Plaintiff,

      v.

STATOIL ASA,

                        Third Party Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................2

    A.    Federal common law affords relief.............................................................2

    B.    Congress has not displaced the Cities' claim. ...........................................6

    C.    The Cities' federal nuisance claim does not violate the separation
           of powers. ...................................................................................................8

III.  CONCLUSION ...................................................................................................11

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

### Cases

4

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ................................................................................................. 3

5

6

*American Electric Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ......................................................................................... *passim*

7

*Baker v. Carr*,
    369 U.S. 186 (1962) ................................................................................................. 8

8

9

*Barclays Bank Plc v. Franchise Tax Bd.*,
    512 U.S. 298 (1994) ................................................................................................. 8

10

11

*Bush v. Lucas*,
    462 U.S. 367 (1983) ................................................................................................. 3

12

*California v. Purdue Pharma L.P.*,
    2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) ......................................................... 5

13

14

*Cent. Valley Chrysler-Jeep v. Goldstene*,
    529 F. Supp. 2d 1151 (E.D. Cal. 2007) ................................................................... 7

15

16

*City of Evansville v. Kentucky Liquid Recycling*,
    604 F.2d 1008 (7th Cir. 1979) ................................................................................. 5

17

*Connecticut v. Am. Elec. Power Co.*,
    582 F.3d 309 (2d Cir. 2009) ............................................................................ 5, 7, 8

18

19

*County of Oneida v. Oneida Indian Nation of New York State*,
    470 U.S. 226 (1985) ................................................................................................. 6

20

21

*Doe I v. Nestle USA*,
    766 F.3d 1013 (9th Cir. 2014) ................................................................................. 8

22

*FEC v. Akins*,
    524 U.S. 11 (1998) ................................................................................................... 4

23

24

*Georgia v. Tennessee Copper Co.*,
    206 U.S. 230 (1907) ................................................................................................. 4

25

26

*Georgia v. Tennessee Copper Co.*,
    237 U.S. 474 (1915) ................................................................................................. 4

27

*Gilligan v. Morgan*,
    413 U.S. 1 (1973) ..................................................................................................... 8

28

*Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*,
   508 F. Supp. 2d 295 (D. Vt. 2007) ................................................................. 7

*Illinois ex. Rel. Scott v. City of Milwaukee*,
   1973 U.S. Dist. LEXIS 15607 (N.D. Ill. 1973) ............................................... 4

*Illinois v. City of Milwaukee*,
   406 U.S. 91 (1972) .......................................................................................... 4

*Japan Line, Ltd. v. Cty. of Los Angeles*,
   441 U.S. 434 (1979) ........................................................................................ 8

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ........................................................................................ 5

*Michelin Tire Corp. v. Wages*,
   423 U.S. 276 (1976) ........................................................................................ 8

*Michelin Tire Corp. v. Wages*,
   423 U.S. 276 (1976) ........................................................................................ 8

*Milwaukee v. Illinois,*
   451 U.S. 304 (1981) ........................................................................................ 8

*North Carolina v. TVA*,
   615 F.3d 291 (4th Cir. 2010) .......................................................................... 5

*NW. Envtl. Def. Ctr. v. Owens Corning Corp.*,
   434 F. Supp. 2d 957 (D. Or. 2006) ................................................................. 5

*In re Philippine Nat'l. Bank*,
   397 F.3d 768 (9th Cir. 2005) .......................................................................... 7

*Stream Pollution Control Bd. v. United States Steel Corp.*,
   512 F.2d 1036 (7th Cir. 1975) ........................................................................ 5

*Sullivan v. First Affiliated Secur., Inc.*,
   813 F.2d 1368 (9th Cir. 1987) .................................................................. 1, 2, 3

*Township of Long Beach v. City of New York*,
   445 F. Supp. 1203 (D.N.J. 1978) .................................................................... 5

*United States v. Ira S. Bushey & Sons*,
   363 F. Supp. 110 (D. Vt. 1973) ...................................................................... 6

*United States v. Stoeco Homes, Inc.*,
   359 F. Supp. 672 (D.N.J. 1973) ...................................................................... 6

STATUTES

Clean Air Act, 42 U.S.C. § 7401 *et seq.* .................................................................... 1

Global Climate Protection Act of 1987, Title XI of Pub. L. 100–204, 101 Stat. 1407 ........................ 7

OTHER AUTHORITIES

R. Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers, 1854–2010*, Climatic Change, Jan. 2014 ......................... 6

Restatement (Second) of Torts § 821B (1979) ................................................ 9

W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, *Prosser and Keeton on the Law of Torts* § 52 (5th ed. 1984) .......................... 10

1

## I.     INTRODUCTION

2        The United States' amicus brief makes three arguments, all largely based on misconceptions

3   about the scope and complexity of the Cities' claims.

4        *First*, the United States incorrectly contends that federal common law affords no relief in

5   these cases, relying heavily on out-of-context snippets from *American Electric Power Co. v.*

6   *Connecticut*, 564 U.S. 410 (2011) ("*AEP*").   *AEP* did not decide whether federal common law would

7   afford a remedy even in that case, where the plaintiffs sought judicial emissions caps that would have

8   engaged the courts in a direct regulation of pollution sources already regulated by the U.S.

9   Environmental Protection Agency.  The Court in *AEP* acknowledged that "public nuisance law, like

10  common law generally, adapts to changing scientific and factual circumstances," and that "federal

11  courts are free to apply the traditional common-law technique of decision when fashioning federal

12  common law."   *AEP*, 564 U.S. at 423 (quotation marks omitted).  These principles plainly counsel

13  this Court to let the Cities try to prove their claims, particularly since these claims do not challenge

14  any activity regulated under the Clean Air Act, and do not seek to enjoin any defendant's conduct --

15  and therefore raise none of the policy concerns at issue in *AEP*.  The United States' assertion that

16  these cases will engage the Court in "critical policy judgments," USA Br. 5:8,[1] is mistaken: the main

17  "judgments" at issue are who has contributed most to the massive flooding threat to the Cities, and

18  whether those parties should be required to pay to avert the harm.  Both questions are traditional tort

19  issues and the second has already been resolved by basic nuisance principles – including under

20  decisions that evaluated factual scenarios (*e.g.*, pollution of Lake Michigan by multiple sources) that

21  parallel this case in their salient features.  And no matter who prevails in this lawsuit, this Court will

22  effectively be making a judgment on these issues: dismissing the case simply would be making a pre-

23  judgment in defendants' favor, by eliminating a potential liability that could otherwise attach under

24  existing legal principles.

25

26        [1] All ECF references herein are to No. 3:17-cv-06011-WHA.  "USA Br." refers to the Amicus
     Curiae Brief of the United States of America in Support of Dismissal, May 10, 2018, ECF 245.
27   "Def. Br." refers to Defendants' Motion to Dismiss First Amended Complaint, Apr. 18, 2018, ECF
     225.  "FAC" refers to the Amended Complaints, Apr. 3, 2018, ECF Nos. 199 (17-cv-6011-WHA)
28   and 168 (17-cv-6012-WHA).

1      **Second**, the United States' argument based upon displacement of federal common law

2   essentially regurgitates the argument from the defendants' briefs.  The argument should be rejected

3   for the reasons described in the Cities' papers responding to those briefs.  ECF 235 at 9-13.

4      **Third**, the Court should reject the United States' separation of powers arguments.  Once

5   again, these arguments misunderstand the Cities' claims – *i.e.*, the United States assumes that these

6   claims require a complex balancing of the costs and benefits of fossil fuels.  Not so.  Where a

7   plaintiff's injury is severe, and where the remedy seeks to afford relief without enjoining the

8   defendant's conduct, the utility of that conduct is irrelevant.  Put differently, the fact that the

9   defendants may provide an economically valuable product in no way justifies their attempt to walk

10  away from the harm these products are causing in Oakland and San Francisco.  Forcing the

11  defendants to pay to deal with this harm, rather than simply letting it fall on the parties who happen

12  to suffer most, merely internalizes the hidden costs of Defendants' products; it does not enmesh the

13  Court in cost-benefit analysis.

14      At bottom, the common law of nuisance, and the federal common law of nuisance in

15  particular, were designed to protect against emerging environmental harms caused by conduct that

16  has not yet been regulated by statute.   The abatement fund the Cities seek here against producers,

17  sellers and promoters of fossil fuels is entirely consistent with these traditional principles; the United

18  States' arguments to the contrary should be rejected.

19                              **II.      ARGUMENT**

20  **A.      Federal common law affords relief.**

21      The United States correctly observes that in *AEP*, the Supreme Court "left open" the issues of

22  "whether federal common law claims are available to redress climate-related claims" and whether

23  political subdivisions of a state may bring federal nuisance claims.  USA Br. 7:13-16.  But the United

24  States' answers to these questions are based upon out-of-context snippets from *AEP*, inapposite

25  cases, and misinterpretation of federal common law.[2]

26  _____

27      [2] The United States proceeds on the premise that federal law can simultaneously apply in these
    cases while providing no remedy.  USA Br. 6:20.  However, in a case where jurisdiction is premised
    on removal, this is incorrect.  *See Sullivan v. First Affiliated Secur., Inc.*, 813 F.2d 1368, 1372 (9th

28  Cir. 1987) ("If . . . state law is preempted by federal law and federal law provides no remedy, the

*First*, the United States is incorrect in arguing that there should be no cognizable federal claim here absent action by Congress to create a claim.  The United States relies on the Court's statement in *AEP* that "'the Court remains mindful that it does not have creative power akin to that vested in Congress.'"  USA Br. 7:3-4 (quoting *AEP*, 564 U.S. at 422).  But the Court ultimately declined to decide whether federal common law afforded a remedy, even in a more complicated case like *AEP*, which sought judicially imposed emissions caps.  In so doing, the Court pointed out that: (1) "we have recognized that public nuisance law, like common law generally, adapts to changing scientific and factual circumstances," (2) the Court had previously adjudicated claims even though they did "not concern nuisance of the simple kind that was known to the older common law," and (3) "federal courts are free to apply the traditional common-law technique of decision when fashioning federal common law."  *Id.* at 423 (quotation marks omitted).

Nor does the United States advance its argument by invoking cases concerning the creation of new private rights of action based upon federal statutory rights.  USA Br. 7:1-13.  Those cases deal with an entirely different problem, *i.e.*, the need to "interpret [a] statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "Statutory intent on this latter point is determinative."  *Id.*  Thus, for example, in *Bush v. Lucas*, 462 U.S. 367, 368 (1983), the Court declined to recognize a First Amendment damages remedy for a demoted federal employee "[b]ecause such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States."  Here, there is no federal remedial scheme, statutory or otherwise, for claims against fossil fuel producers for their contributions to global warming.

The United States' characterization of prior federal common law cases is also inaccurate.  *Milwaukee I* did not involve "a single defendant's activities" or "discrete" pollution.  USA Br. 7:20-21.  There were six defendants in that case as originally filed in the Supreme Court.  *See Illinois v.*

---

state claim cannot be recharacterized as federal, as no federal claim exists, preemption is interposed solely as a defense, and removal is improper.").

1    *City of Milwaukee*, 406 U.S. 91, 93 (1972).  And when Illinois re-filed the case in federal district

2    court under federal question jurisdiction, it was joined by Michigan as a co-plaintiff, which

3    complained of a notably non-discrete harm, *i.e.*, eutrophication of Lake Michigan, a process of algal

4    overgrowth caused by nutrient pollution not just from the major source defendants but from non-

5    point sources of runoff all over a watershed spread across multiple states and two nations:

6            Eutrophication is a gradual process in which the changes from year to year are
         imperceptible.  One must measure in terms of decades if not longer intervals to
7            see the difference . . . .  Nutrients are discharged into the lake by "point sources,"
         such as paper mills and sewage treatment plants, and by "non-point sources," such
8            as tributary creeks and rivers carrying the runoff from farm lands, and even the
         air, which conveys significant quantities of phosphorous and other chemicals into
9            the lake.  There is no means of identifying any particular molecule of
         phosphorous or nitrogen or any other chemical as having come from a particular
10           source, either point or non-point.[3]

11   Notwithstanding the diffuse, diverse and numerous sources of pollution (ranging from the *de minimis*

12   contributions of individual farms to the very large sewage plants), the district court applied the

13   federal common law of public nuisance and found liability against "the largest point source on the

14   lake."  *Id*. at *15.  Here, as in *Illinois v. Milwaukee*, the Cities have identified defendants that are

15   among the largest contributors to a widespread environmental problem.

16           To be sure, as the United States points out, the Cities' claim here encompasses activity that is

17   global in scope and products that are widely used.  USA Br. 7:23-9:3.  But that is simply a

18   consequence of the fact that defendants engage in global conduct to produce, sell and promote

19   products that cause global changes with discrete, localized impacts in many places.  Here again the

20   Supreme Court's observation in *AEP* is on point: "we have recognized that public nuisance law, like

21   common law generally, adapts to changing scientific and factual circumstances."  564 U.S. at 423.

22   And it has held, in the context of standing law, that injury "widely shared" by a great many people is

23

24

25   _____

26           [3] *Illinois ex. rel. Scott v. City of Milwaukee*, 1973 U.S. Dist. LEXIS 15607 (N.D. Ill. 1973), at
     *13-15, *aff'd in rel. part, rev'd in part*, 599 F.2d 151 (7th Cir. 1979), *vacated on other grounds,
     Milwaukee v. Illinois*, 451 U.S. 304 (1981).  The other case the United States cites, *Georgia v.
27   Tennessee Copper Co*., 206 U.S. 230, 238 (1907), also involved more than one defendant.  *See
     Georgia v. Tennessee Copper Co.*, 237 U.S. 474 (1915) (granting relief against additional
28   defendant).

1    cognizable as long as it is concrete, a ruling it has applied to global warming.[4]  The same logic

2    applies here when considering the merits of a claim: causing widespread injury through the

3    combined effects of widespread conduct on a vast scale is not a reason counseling *against*

4    recognition of a claim.[5]

5         *Second*, the United States' contention that federal common law applies only in cases brought

6    by itself and states as sovereigns misconstrues both the nature of the City Attorneys' legal authority

7    and federal common law.  USA Br. 9:4-5.  Here, the City Attorneys have sued in the name of the

8    People in both cases and as such are acting on behalf of the State within their respective

9    jurisdictions.[6]  Moreover, the United States overlooks cases holding that municipalities are proper

10   plaintiffs under federal nuisance law.[7]  And while it is true that, "[h]istorically," the federal common

11   law of nuisance was grounded in the Supreme Court's original jurisdiction in actions by States, USA

12   Br. 9:11-10:6, under *Milwaukee I* interstate nuisances now arise under federal law because of the

13   nature of their subject matter.  *Milwaukee I*, 407 U.S. at 105 n.6.  This is the very reason why the

14   United States, which is not entitled to bring a claim in the Supreme Court's original jurisdiction,

15

16
     _____

17      [4] *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("where a harm is concrete, though widely shared, the
     Court has found injury in fact . . . .  This conclusion seems particularly obvious where (to use a
18   hypothetical example) large numbers of individuals suffer the same common-law injury (say, a
     widespread mass tort)"); *Massachusetts v. EPA*, 549 U.S. 497, 522 (2007) ("That these climate-
19   change risks are 'widely shared' does not minimize Massachusetts' interest in the outcome of this
     litigation.") (quoting *Akins*); *see also NW. Envtl. Def. Ctr. v. Owens Corning Corp.*, 434 F. Supp. 2d
20   957, 966 (D. Or. 2006) ("The greater the threatened harm, the less power the courts would have to
     intercede.  That is an illogical proposition.").

21      [5] The United States invokes the Supreme Court's concern in *AEP* about varying and potentially
     conflicting pronouncements from federal district courts, USA Br. 8:18-23, but this, again, is an
22   instance of out-of-context quotation.  In context, the Supreme Court was addressing a claim for
     injunctive relief seeking to "set limits on greenhouse gases in the face of a law empowering EPA to
23   set the same limits."  564 U.S. at 429.  The same was true in *North Carolina v. TVA*, 615 F.3d 291
     (4th Cir. 2010), also cited by the United States.  *See* USA Br. 8:12-15.  The Cities here do not seek to
24   impose emissions limits and have not even brought suit against emitters.

25      [6] *See California v. Purdue Pharma L.P.*, 2014 WL 6065907, at *3-4 (C.D. Cal. Nov. 12, 2014)
     (holding that in public nuisance actions brought by a city on the People's behalf, the real party in
26   interest is the state).

27      [7] *See Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 361 (2d Cir. 2009), *rev'd on other
     grounds*, 564 U.S. 410 (2011); *City of Evansville v. Kentucky Liquid Recycling*, 604 F.2d 1008, 1018
28   (7th Cir. 1979); *Township of Long Beach v. City of New York*, 445 F. Supp. 1203, 1214 (D.N.J.
     1978).

1    itself may bring federal nuisance claims in federal district court and thus has long been, itself, a

2    beneficiary of the federal nuisance doctrine set forth in *Milwaukee I*.[8]

3          The United States fails to demonstrate that the Cities' federal common law public nuisance

4    claim affords no relief.

5    **B.    Congress has not displaced the Cities' claim.**

6          The United States, in all of its displacement arguments, fundamentally misconstrues the

7    displacement test.  In *County of Oneida v. Oneida Indian Nation of New York State*, 470 U.S. 226,

8    238-39 (1985), the Supreme Court rejected displacement of a federal common law claim.  In doing

9    so, it emphasized that the legislation at issue contained "no remedial provision" for the conduct at

10   issue, "in contrast to the specific remedial provisions" of the statute that displaced the claim in

11   *Milwaukee II*.

12         Here, there is no "remedial provision" for global warming injuries caused by fossil fuel

13   production, sales and promotion in any federal statute.  The United States' assertion that the Clean

14   Air Act displaces the claim here because "the Cities seek to hold the Defendants liable for exactly

15   the same conduct (greenhouse gas emissions)" at issue in *AEP* and *Kivalina*, USA Br. 14:13-15,

16   directly contradicts the focus of the Cities' complaints, this Court's prior decision on the remand

17   motions,[9] and even defendants' argument that "this Court should *extend AEP* and *Kivalina* to find

18   displacement here as well."  Def. Br. 9:11-12 (emphasis added).  The United States also

19   misconstrues the complaints in contending that the allegations somehow encompass the use of fossil

20

21   _____

22        [8] *See Stream Pollution Control Bd. v. United States Steel Corp.*, 512 F.2d 1036, 1040 n.9 (7th
     Cir. 1975) (Stevens, J.) (argument that federal nuisance "depends on the existence of a conflict

23   between sovereigns" is at odds with cases permitting United States to sue in federal nuisance);
     *United States v. Ira S. Bushey & Sons*, 363 F. Supp. 110, 120 (D. Vt. 1973) (granting injunction to

24   United States under federal common law), *aff'd without opinion*, 487 F.2d 1393 (2d Cir. 1973);
     *United States v. Stoeco Homes, Inc.*, 359 F. Supp. 672, 679 (D.N.J. 1973) ("defendant's activities

25   amount to a public nuisance in violation of federal common law and, as such, are subject to
     abatement at the instance of the Government."), *modified*, *United States v. Stoeco Homes, Inc.*, 498

26   F.2d 597, 611 (3d Cir. 1974) ("The United States can, of course, sue to abate a public nuisance under
     federal common law.").

27        [9] *See* Order Denying Motions to Remand, ECF No. 134, at 6:18-21 ("plaintiffs here have fixated
     on an earlier moment in the train of industry, the earlier moment of production and sale of fossil

28   fuels, not their combustion.").

1    fuels for chemical and plastics production, USA Br. 15:1-11, when the complaints in fact exclude

2    such uses from defendants' contributions to global warming.[10]

3           The other domestic statutes that the United States relies upon, relating to the production of

4    fossil fuels on federal lands, speak only in broad generalities and contain no remedial provision for

5    the conduct at issue here, nor even any provision relating to climate change.  USA Br. 20-22.  These

6    statutes thus do not "speak directly" to the issue presented here.

7           Nor is there any international relations action by Congress or the Executive Branch that

8    speaks directly to the issue of compensation for global warming injuries caused by fossil fuel

9    production, sales and promotion.  The United States invokes the Global Climate Protection Act of

10   1987.[11]  But as the Second Circuit observed, that statute "consists almost entirely of mere platitudes"

11   and thus does not displace a federal common public nuisance claim.  *AEP,* 582 F.3d at 383; *see also*

12   *id.* at 331-32.  The United States also relies upon cases preempting state law that have conflicted

13   with federal foreign policies but neglects two cases that have addressed, and rejected, alleged foreign

14   policy preemption of state laws in the specific context of climate change.[12]  According to its brief,

15   the United States is "involved in discussions as to whether and how to address climate change, most

16   recently in the Paris Agreement," which it says it "is in the process of withdrawing from."  USA Br.

17   18:12-13, 2:9-10.  But "a commitment to negotiate falls short of" the Supreme Court's foreign policy

18   preemption standard.  *Cent. Valley*, 529 F. Supp. 2d at 1186.  The district courts in *Central Valley*

19   and *Green Mountain* thus rejected foreign policy preemption challenges to state laws that directly

20   regulate greenhouse gas emissions.

21          Finally, the Cities' federal nuisance claim does not run afoul of the Act of State doctrine or

22   the federal government's exclusive role in regulating commerce with foreign nations.  *See* USA Br.

23

24          [10] "These non-combustion uses effectively store carbon, and thus must be subtracted from the
25   emission calculations."  R. Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions
     to Fossil Fuel and Cement Producers, 1854–2010*, Climatic Change, Jan. 2014, at 237, at
26   https://link.springer.com/content/pdf/10.1007%2Fs10584-013-0986-y.pdf), cited in FAC ¶ 94 n.71.

          [11] USA Br. 18:3-10 (citing Pub. L. No. 100-204, tit. XI, 101 Stat. 1331).
27
          [12] *See Cent. Valley Chrysler-Jeep v. Goldstene*, 529 F. Supp. 2d 1151, 1183-88 (E.D. Cal. 2007);
28   *Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 396 (D. Vt. 2007).

PLAINTIFFS' RESPONSE TO U.S. AMICUS BRIEF - 7
Case No.: 3:17-cv-06011-WHA; 3:17-cv-06012-WHA

1   18-20.  These are not displacement doctrines at all and, in any event, the cases cited are readily

2   distinguished.  *In re Philippine Nat'l. Bank*, 397 F.3d 768, 772 (9th Cir. 2005), held that, under the

3   Act of State doctrine, a lower court erred by issuing an order that "held invalid" a foreign judgment

4   of the Philippine Supreme Court.  Here, the United States points to no foreign judgment that would

5   be invalidated by the Cities' federal nuisance claim but merely suggests hypothetical situations in

6   which foreign governments "could respond" to private party nuisance liability with some kind of

7   retaliation.  USA Br. 19:8. The foreign commerce cases cited by the United States merely hold that

8   nondiscriminatory state taxes are valid.[13]  A federal court judgment in favor of the Cities on their

9   federal nuisance claim would not be a state law, a tax, or a discriminatory action against foreign

10  commerce.

11  **C.      The Cities' federal nuisance claim does not violate the separation of powers.**

12          Resolution of this case will not violate the separation of powers.  The United States'

13  contention that there is a "lack of judicially discoverable and manageable standards" is a *sub silentio*

14  invocation of the second factor of the political question doctrine.  *See Baker v. Carr*, 369 U.S. 186,

15  217 (1962).  For the reasons set forth by the Second Circuit in *AEP*, 582 F.3d at 326-30, this

16  argument should be rejected.  The Ninth Circuit's decision in *Kivalina* also implicitly rejected this

17  argument, as set forth in the Cities' main brief.  ECF 235 at 24:7-9.  The United States invokes the

18  political question decision in *Gilligan v. Morgan*, 413 U.S. 1 (1973), but the Cities' tort claim

19  seeking an equitable abatement fund (*i.e.*, monetary relief)  is fundamentally unlike *Gilligan*, where

20

21          [13] *Barclays Bank Plc v. Franchise Tax Bd.*, 512 U.S. 298, 320-330 (1994) (holding that
    California's worldwide combined reporting requirement for calculating corporate franchise tax does
22  not frustrate federal government's ability so speak with one voice when regulating commercial
    relations with foreign governments); *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 286 (1976) ("It is
23  obvious that such nondiscriminatory property taxation can have no impact whatsoever on the Federal
    Government's exclusive regulation of foreign commerce, probably the most important purpose of the
24  Clause's prohibition."); *Japan Line, Ltd. v. Cty. of Los Angeles*, 441 U.S. 434, 452 (1979)
    (invalidating state tax that "creates more than the *risk* of multiple taxation; it produces multiple
25  taxation in fact"); *cf.* USA Br. 20:11 (contending Cities' claim "creates an unacceptable risk of
    double taxation"). The United States also relies upon *Morrison v. National Australia Bank Ltd.*, 561
26  U.S. 247 (2010), USA Br. 18:22-26, which held that a federal statute does not apply extra-
    territorially.  But *Morrison* dealt with legislative intent and thus, even if this issue were relevant to a
27  claim by domestic plaintiffs bringing claims for domestic property injuries, which it is not, *Morrison*
    "cannot sensibly be applied" to "common law claims."  *Doe I v. Nestle USA*, 766 F.3d 1013, 1028
28  (9th Cir. 2014).

the plaintiffs sought "continuing regulatory jurisdiction over the activities of the Ohio National Guard" as a result of the Kent State killings, which ran afoul of a specific textual constitutional provision granting Congress and the states "responsibility for organizing, arming, and disciplining the Militia (now the National Guard)." *Id.* at 5-6.

The United States also misapprehends public nuisance law by contending that the requirement of an "unreasonable" interference with public rights will require the Court to weigh the social utility of defendants' conduct against the environmental benefits. USA Br. 23:16-25. Such weighing is required only in a case seeking to enjoin the defendant's conduct. Where the plaintiff is not seeking to enjoin the defendant's conduct, then the court is not required to evaluate the social utility of this conduct:

> In determining whether to award damages, the court's task is to decide whether it is unreasonable to engage in the conduct without paying for the harm done. Although a general activity may have great utility it may still be unreasonable to inflict the harm without compensating for it. In an action for injunction the question is whether the activity itself is so unreasonable that it must be stopped.

Restatement (Second) of Torts § 821B cmt. i (1979). As set forth in the Cities' remand briefing, in cases of "severe" harm such as this, and where no injunction is sought, the Restatement and case law expressly dispense with any balancing. ECF 108 at 11:22 -13:1 & n.13.

It should also be clear that this logic applies equally whether the relief requested is damages or (as here) an abatement fund. The purpose of the balancing test is to ensure that courts do not issue orders prohibiting economically valuable conduct, even in cases of severe harm. But where the plaintiff does not seek to prohibit the defendant's conduct, the fact that the conduct is economically valuable does not prevent a court from taking reasonable steps to ensure that victims of "severe" harm are afforded relief – and this is true regardless of whether the plaintiff is afforded relief by a damages award or by the sort of abatement fund requested by the Cities. In either case, the defendant is free to continue its conduct, and the relief to the plaintiff is regarded (in the words of a leading treatise) as "a cost of doing the kind of business in which the defendant is engaged":

> Confusion has resulted from the fact that the intentional interference with the plaintiff's use of his property can be unreasonable even when the defendant's conduct is reasonable. This is simply because a reasonable person could conclude that the plaintiff's loss resulting from the intentional interference ought to be allocated to the defendant. . . . Courts have often

1
2
3
4
5
6

> found the existence of a nuisance on the basis of unreasonable use when what was meant is that the interference was unreasonable, *i.e.*, it was unreasonable for the defendant to act as he did without paying for the harm that was knowingly inflicted on the plaintiff. Thus, an industrial enterprise who properly locates a cement plant or a coal-burning electric generator, who exercises utmost care in the utilization of known scientific techniques for minimizing the harm from the emission of noxious smoke, dust and gas and who is serving society well by engaging in the activity may yet be required to pay for the inevitable harm caused to neighbors. This is simply a decision that the harm thus intentionally inflicted should be regarded as a cost of doing the kind of business in which the defendant is engaged.

7

W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, *Prosser and Keeton on the Law*

8

*of Torts* § 52 (5th ed. 1984). Thus, the United States' reliance on cases such as *AEP* and *North*

9

*Carolina* seeking to enjoin defendants discharging pollution, USA Br. 22-23, is misplaced. This case

10

does not seek to enjoin defendants' conduct.

11

An illustration of these principles comes from an important public nuisance case by the New

12

York Court of Appeals. *Boomer v. Atl. Cement Co.,* 26 N.Y.2d 219 (1970). The defendant operated

13

a cement plant that employed hundreds of people; the neighboring plaintiffs were few and their

14

injury (though severe to them) was small when compared to defendant's investment in the plant and

15

the number of workers employed there. *Id*. at 225. Reluctant to close down the plant, the court

16

declined to engage in the exercise of balancing the utility of defendant's operation against the scope

17

of plaintiffs' harms. Instead, the court issued an injunction that would be dissolved on the payment

18

of money equal to the permanent damage suffered by the neighbors. By facilitating an outcome that

19

resulted solely in monetary relief, the court obviated the need to conduct any balancing test.

20

The Court in *Boomer* held that a "court performs its essential function when it decides the

21

rights of parties before it," even though the ultimate solution to reducing pollution from cement

22

plants "is likely to require massive public expenditure and to demand more than any local

23

community can accomplish." *Id*. at 222-23. In that case, as here, the ultimate solution to the

24

pollution problem was beyond the scope of the case and "depend[s] on the total resources of

25

the . . . industry Nationwide and throughout the world." *Id*. at 226. The Court nonetheless focused

26

on the core cost-shifting function of tort law and afforded relief by way of an equitable judgment.

27

As the Court observed, "[t]he nuisance complained of by these plaintiffs may have other public or

28

private consequences, but these particular parties are the only ones who have sought remedies and the judgment proposed will fully redress them. The limitation of relief granted is a limitation only within the four corners of these actions and does not foreclose public health or other public agencies from seeking proper relief in a proper court." *Id.* at 226. The same basic functions of tort law applied in *Boomer* – allocation and cost-shifting – apply here and militate against the arguments made in support of dismissal.

### III. CONCLUSION

Defendants' motion to dismiss should be denied.

Dated: May 18, 2018                    Respectfully submitted,


                                        ** */s/ Erin Bernstein*
                                        BARBARA J. PARKER (State Bar #069722)
                                        City Attorney
                                        MARIA BEE (State Bar #167716)
                                        Special Counsel
                                        ERIN BERNSTEIN (State Bar #231539)
                                        Supervising Deputy City Attorney
                                        MALIA MCPHERSON (State Bar #313918)
                                        Attorney
                                        One Frank H. Ogawa Plaza, 6th Floor
                                        Oakland, California
                                        Tel.: (510) 238-3601
                                        Fax: (510) 238-6500
                                        Email: ebernstein@oaklandcityattorney.org
                                        Attorneys for Plaintiffs
                                        CITY OF OAKLAND and
                                        PEOPLE OF THE STATE OF CALIFORNIA,
                                        acting by and through Oakland City Attorney
                                        BARBARA J. PARKER
                                            ** Pursuant to Civ. L.R. 5-1(i)(3), the electronic
                                            filer has obtained approval from this signatory.


                                        ** */s/ Matthew D. Goldberg*
                                        DENNIS J. HERRERA, State Bar #139669
                                        City Attorney
                                        RONALD P. FLYNN, State Bar #184186
                                        Chief Deputy City Attorney
                                        YVONNE R. MERÉ, State Bar #173594
                                        Chief of Complex and Affirmative Litigation
                                        ROBB W. KAPLA, State Bar #238896
                                        Deputy City Attorney
                                        MATTHEW D. GOLDBERG, State Bar #240776
                                        Deputy City Attorney
                                        City Hall, Room 234

1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Tel.: (415) 554-4748
Fax.: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through San Francisco City Attorney
DENNIS J. HERRERA

      ** Pursuant to Civ. L.R. 5-1(i)(3), the electronic
      filer has obtained approval from this signatory.

*/s/ Steve W. Berman*
STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, Washington 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

SHANA E. SCARLETT (State Bar #217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
shanas@hbsslaw.com
Tel.: (510) 725-3000
Fax: (510) 725-3001

MATTHEW F. PAWA (*pro hac vice*)
mattp@hbsslaw.com
BENJAMIN A. KRASS (*pro hac vice*)
benk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Tel.: (617) 641-9550
Fax: (617) 641-9551

*Of Counsel Attorneys for Plaintiffs*