1   ARNOLD & PORTER KAYE SCHOLER LLP
    Jonathan W. Hughes (SBN 186829)
2   jonathan.hughes@arnoldporter.com
    Three Embarcadero Center, 10th Floor
3   San Francisco, California  94111-4024
    Telephone:    1 415.471.3100
4   Facsimile:    1 415.471.3400

5   ARNOLD & PORTER KAYE SCHOLER LLP          ARNOLD & PORTER KAYE SCHOLER LLP
    Matthew T. Heartney (SBN 123516)          Philip H. Curtis (*pro hac vice*)
6   matthew.heartney@arnoldporter.com         philip.curtis@arnoldporter.com
    John D. Lombardo (SBN 187142)             Nancy Milburn (*pro hac vice*)
7   john.lombardo@arnoldporter.com            nancy.milburn@arnoldporter.com
    777 South Figueroa Street, 44th Floor     250 West 55th Street
8   Los Angeles, California  90017-5844       New York, New York 10019-9710
    Telephone:    1 213.243.4000              Telephone:    1 212.836.8000
9   Facsimile:    1 213.243.4199              Facsimile:    1 212.836.8689

10  Attorneys for Defendant BP p.l.c.

11

12                       UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14                          SAN FRANCISCO DIVISION

15

16  CITY OF OAKLAND, a Municipal                 First Filed Case: 3:17-cv-06011-WHA
    Corporation, and THE PEOPLE OF THE           Related Case: 3:17-cv-06012-WHA
17  STATE OF CALIFORNIA, acting by and
    through the Oakland City Attorney,           Case No. 3:17-cv-06011-WHA
18
                     Plaintiffs,                 **DEFENDANT BP P.L.C.'S AMENDED**
19                                               **MEMORANDUM OF POINTS AND**
                v.                               **AUTHORITIES IN SUPPORT OF**
20                                               **MOTION TO DISMISS FIRST AMENDED**
    BP P.L.C., a public limited company of       **COMPLAINTS FOR LACK OF**
21  England and Wales; CHEVRON                   **PERSONAL JURISDICTION**
    CORPORATION, a Delaware corporation;
22  CONOCOPHILLIPS, a Delaware corporation;      [Fed. R. Civ. P. 12(b)(2)]
    EXXONMOBIL CORPORATION, a New
23  Jersey corporation; ROYAL DUTCH SHELL        Date:        May 24, 2018
    PLC, a public limited company of England and Time:        8:00 a.m.
24  Wales; and DOES 1 through 10,                Courtroom:   12

25                   Defendants.                 Judge:  Honorable William H. Alsup

26

27

28

CITY AND COUNTY OF SAN
FRANCISCO, a Municipal Corporation, and
THE PEOPLE OF THE STATE OF
CALIFORNIA, acting by and through the San
Francisco City Attorney DENNIS J.
HERRERA,

                    Plaintiffs,

         v.

BP P.L.C., a public limited company of
England and Wales; CHEVRON
CORPORATION, a Delaware corporation;
CONOCOPHILLIPS, a Delaware corporation;
EXXONMOBIL CORPORATION, a New
Jersey corporation; ROYAL DUTCH SHELL
PLC, a public limited company of England and
Wales; and DOES 1 through 10,

                    Defendants.

Case No. 3:17-cv-06012-WHA

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.    The Cities' Claim ..................................................................................3

    B.    BP p.l.c.'s Lack Of Forum Contacts ...................................................3

    C.    How The Cities Might Estimate BP p.l.c.'s Purported Contribution To The Nuisance ..............................................................................................5

ARGUMENT ........................................................................................................................7

THE AMENDED COMPLAINTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER BP P.L.C. ..................................................................7

    A.    BP p.l.c. Is Not "At Home" (And Thus Subject To General Jurisdiction) In The Forum ......................................................................................9

    B.    Nor Is BP p.l.c. Subject To Specific Jurisdiction For This Claim ...........11

        1.    The Claim Does Not Arise out of or Relate to BP p.l.c.'s Forum Activities, Even Imputing All Claim-Related Activities of Indirect Subsidiaries to BP p.l.c. ...........................................................11

            a.    The amended complaints do not allege BP p.l.c.'s California or U.S. activities are a but-for cause of the Cities' claimed injury .............................................................14

            b.    If the Cities rely on "attribution science," that methodology likewise is not evidence that BP p.l.c.'s forum contacts are a but-for cause of the claimed injury .................................15

            c.    Permitting specific jurisdiction on the basis of these tenuous links with the forum would subject BP p.l.c. to jurisdiction in every state, a result that cannot be squared with recent Supreme Court decisions ................................16

            d.    Describing the operational details of indirect subsidiaries is not a substitute for pleading and proving the required but-for causation ..........................................................................17

        2.    Exercising Jurisdiction over BP p.l.c. Would Be Unreasonable ...............18

CONCLUSION ...................................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### Cases

4

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,*
5
    551 F.2d 784 (9th Cir. 1977)..........................................................................................8

6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017)..............................................................................8, 9, 11

7

*BNSF Ry. Co. v. Tyrrell,*
8
    137 S. Ct. 1549 (2017) ...............................................................................................10

9

*Brackett v. Hilton Hotels Corp.,*
    619 F. Supp. 2d 810 (N.D. Cal. 2008) .......................................................................11
10

11

*Brayton Purcell LLP v. Recordon & Recordon,*
    606 F.3d 1124 (9th Cir. 2010).......................................................................................8

12

*Bristol-Myers Squibb Co. v. Superior Court,*
13
    137 S. Ct. 1773 (2017) ........................................................................................*passim*

14

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)....................................................................................................18
15

16

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    653 F.3d 1066 (9th Cir. 2011).....................................................................................8, 9

17

*Corcoran v. CVS Health Corp.,*
18
    169 F. Supp. 3d 970 (N.D. Cal. 2016) .........................................................................8

19

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014) ..........................................................................................*passim*
20

21

*Doe v. Am. Nat'l Red Cross,*
    112 F.3d 1048 (9th Cir. 1997)........................................................................11, 13, 15

22

*Doe v. Unocal Corp.,*
23
    248 F.3d 915 (9th Cir. 2001)................................................................................11, 12

24

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002).....................................................................................11
25

26

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
    711 F. Supp. 2d 1074 (C.D. Cal. 2010)........................................................................9

27

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
28
    564 U.S. 915 (2011) .................................................................................................9, 11

*Holland Am. Line Inc. v. Warstila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007).................................................................................................. 9

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014)............................................................................................. 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)............................................................................................... 8

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017)............................................................................................. 11

*Mulato v. Wells Fargo Bank, N.A.*,
   76 F. Supp. 3d 929 (N.D. Cal. 2014) .................................................................................... 8

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998)........................................................................................ 18, 19

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952) ............................................................................................................. 10

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015)............................................................................................ 8, 9

*Rashidi v. Veritiss, LLC*,
   No. 2:16-cv-04761-CAS, 2016 WL 5219448 (C.D. Cal. Sept. 19, 2016) ................................... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)............................................................................................ 8, 11

*Sullivan v. Ford Motor Co.*,
   No. 16-cv-03505-JST, 2016 WL 6520174 (N.D. Cal. Nov. 3, 2016)........................... 12, 14, 15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)................................................................................................. 8

*Terracom v. Valley National Bank*,
   49 F.3d 555 (9th Cir. 1995).......................................................................................... 13, 15

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ........................................................................................................ 7, 18

**<u>Rules</u>**

Fed. R. Civ. P. 4(k)(2) ..................................................................................................................... 8, 9

Fed. R. Civ. P. 12(b)(2) ...................................................................................................................... 2

## AMENDED MEMORANDUM OF POINTS AND AUTHORITIES

BP p.l.c. respectfully submits this amended memorandum in support of its motion to dismiss the first amended complaints for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).

### Introduction

BP p.l.c. moves to dismiss for lack of personal jurisdiction.  BP p.l.c. is a United Kingdom parent company that is not "at home" in California or the United States and therefore cannot be subjected to general jurisdiction under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  Nor can BP p.l.c. be subjected to specific jurisdiction because the Cities' claim does not "arise out of or relate to" BP p.l.c.'s claim-related forum contacts—even imputing all contacts of subsidiaries to BP p.l.c.[1]—as that requirement is defined in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), and in controlling Ninth Circuit case law requiring that a foreign defendant's forum contacts be a "but for" cause of the claim.

Examining the expansive contours of the Cities' claim reveals why the Cities cannot show, as they must, that their claim would not exist but for BP p.l.c.'s imputed California or U.S. activities.  First, as the Court noted, the claim "attack[s] behavior worldwide."  (Order Denying Mots. To Remand at 7:10-11, ECF No. 134; *id.* at 6 n.2 (the claims "are not localized . . . and instead concern fossil fuel consumption worldwide").)  Indeed, the extraction, transportation, and/or burning of fossil fuels has taken place at every spot on the surface of the earth and most spots under or on the oceans.  Second, the actors involved in the behaviors that are allegedly producing climate change and related sea-level rise are equally vast in number.  They include sovereign nations that own the fossil fuels and decide to have them produced; private and sovereign companies that extract the fossil fuels who far outnumber the five defendants the Cities have sued; transportation companies that move the raw product to treatment and refining centers; and various end users (manufacturers; power plants; airlines;

---

[1] The Cities have named BP p.l.c. as a proxy for various separately organized indirect subsidiary companies that now or in times past have extracted oil or natural gas from the earth.  They have done so as a transparent expedient for trying to avoid the due process limitations on personal jurisdiction over those subsidiaries.  While BP p.l.c. denies that its indirect subsidiaries' production of fossil fuels can properly be imputed to it for jurisdictional purposes, and reserves all rights in that regard for any other purpose or proceeding, solely for purposes of this motion it will assume that all fossil fuel production in California or the United States by any indirect subsidiary may be imputed to BP p.l.c.

1    federal, state, and local governments; and ordinary folks who drive cars and heat homes) who burn the

2    fossil fuels.  Third, and most critically, the Cities have not alleged or shown that the fossil fuel

3    production they would impute to BP p.l.c. and that occurred in California or other U.S. states made a

4    jurisdictionally significant contribution to global greenhouse gas emissions, and consequently, to the

5    alleged public nuisance.

6        More specifically, as will be shown below, the Cities' "attribution science" methodology[2] does

7    not even purport to establish any causal link between the oil and gas produced by indirect subsidiaries

8    of BP p.l.c. in California or the United States since 1975—the earliest date the Cities allege defendants

9    knew that burning fossil fuels would cause climate change and sea-level rise—and the claimed public

10   nuisance.  The most that could possibly be inferred from those studies, moreover, is that this California

11   and U.S. production during that time period contributed a mere *fraction of a fraction* of the 2.47% of

12   global "industrial" greenhouse gas emissions that the studies purport to attribute to BP p.l.c.  That

13   fraction would only be diluted further if the Cities' method were used to estimate BP p.l.c.'s imputed

14   California and U.S. contributions to changes in global surface temperatures and sea-level rise (*i.e.*, the

15   conditions said to be causing the nuisance).

16       Given this extraordinarily tenuous nexus, the Cities cannot show that their claimed property

17   harms would have appeared any different today in the absence of the California and U.S. activities of

18   BP p.l.c.'s indirect subsidiaries.  It is unsurprising, therefore, that even after amending their original

19   complaints in response to BP p.l.c.'s initial motion to dismiss, the Cities still do not allege the essential

20   jurisdictional fact that BP p.l.c.'s California or U.S. activities are a but-for cause of the alleged public

21   nuisances in San Francisco and Oakland.  The Court should accordingly dismiss the amended

22   complaints as against BP p.l.c. for lack of personal jurisdiction.

---

[2] To be clear, although BP p.l.c. does not challenge the attribution methodology solely for purposes of this motion, BP p.l.c. does not credit or otherwise subscribe to the methodology and, in fact, believes the analyses of Richard Heede and others discussed below (*infra* pp. 6-8) are flawed for a host of reasons.

**Background**

A.   **The Cities' Claim**

The Cities allege that global warming-induced sea-level rise is threatening public and private property in San Francisco and Oakland.  (FAC ¶ 1.)[3]  They call each defendant a "multinational, vertically integrated oil and gas company" (*id.* ¶¶ 16, 19, 22, 25, 28) that is among the "ten largest producers [of fossil fuels] in all of history" (*id.* ¶ 92).  BP p.l.c., they claim, is the fourth largest such producer.  (*Id.* ¶ 94.b.)  The Cities have not named as a defendant any other fossil fuel producer (including any of the other "largest cumulative producers" (*id.*)), nor other refiners, transporters, or sellers.  Nor have they sued anyone for *using* (combusting) fossil fuels, which of course is what releases greenhouse gases into the atmosphere.  (*Id.* ¶¶ 74, 92.)

Defendants allegedly have known "since at least the late 1970s and early 1980s" that fossil fuels would contribute to "dangerous global warming and associated accelerated sea level rise." (*Id.* ¶¶ 2, 5.)  Fossil fuels do so, the Cities allege, by releasing "greenhouse gases, including carbon dioxide ($CO_2$) and methane, which trap atmospheric heat and increase global temperatures."  (*Id.* ¶ 74.)  Greenhouse gases emitted when a defendant's fossil fuels are combusted "combine[]" in the atmosphere "with the greenhouse gas emissions from fossil fuels produced by the other Defendants, among others," and can remain for hundreds of years or longer.  (*Id.* ¶¶ 4, 140.)  Despite allegedly knowing these facts, defendants continued to produce "massive amounts of fossil fuels" and to promote their usage as "environmentally responsible," including by "denying mainstream climate science."  (*Id.* ¶¶ 2, 5, 6.)  The allegedly "wrongful conduct" at issue in the Cities' claim "is the production and promotion of fossil fuels."  (Pl.'s Reply Supp. Mot. Remand at 18, ECF No. 91.)  The Cities are not suing defendants for their "direct emissions of greenhouse gases."  (FAC ¶ 11.)

B.   **BP p.l.c.'s Lack Of Forum Contacts**

BP p.l.c. is a public limited company that is registered in England and Wales and headquartered in London, England.  (FAC ¶ 16.)  The Cities do not allege that BP p.l.c. itself is "at

---

[3] The allegations contained in the Cities' first amended complaints are materially identical, and therefore, for ease of reference, all citations to "FAC" in this Motion are to the first amended complaint filed by the City and County of San Francisco in Case No. 3:17-cv-06012-WHA.

home" or even operates in California or the United States, as opposed to operating only indirectly through subsidiaries.  Nor do the Cities allege that any of BP p.l.c.'s indirect subsidiaries are themselves "at home" in California.

In one lengthy and repetitive paragraph, the Cities list eight indirect subsidiaries of BP p.l.c. that allegedly "do business," are registered to do business, and have designated agents for service of process in California.  (FAC ¶ 35 (calling each an "agent" of BP p.l.c.).)  The Cities allege that "through its subsidiaries," BP p.l.c. has "[c]onnections [t]o California" that have included owning or operating port facilities to receive crude oil, shipping Alaskan crude oil to California, licensing the ARCO trademark and brand to gasoline stations, and promoting gasoline sales over a company Web site that offers credit cards and gasoline discounts.  (*Id.* at 10:18, ¶¶ 35-41.)  The Cities do not allege that these California activities caused their claimed sea-level rise injuries, however.

The Cities go on to allege that BP p.l.c., "through its subsidiaries and agents," also "does business in the United States."  (*Id.* ¶ 42.)  These business activities are alleged to include producing fossil fuels in the Gulf of Mexico, Alaska, Colorado, New Mexico, Oklahoma, and Wyoming; owning refineries (in Illinois, Ohio, and Washington) and pipelines in various states; marketing gasoline through BP-branded stations; and registering the BP trademark with USPTO.  (*Id.* ¶¶ 42-50.)  Again, the Cities do not allege that their claimed climatic injuries would not have existed but for these U.S. activities of BP p.l.c.'s indirect subsidiaries.

Indeed, even after amending the original complaints in response to BP p.l.c.'s initial motion to dismiss, the Cities still do not allege, either factually or conclusorily, that BP p.l.c.'s purported forum activities gave rise to the alleged public nuisance.  Nor do they allege that global levels of greenhouse gases in the atmosphere (which are what the Cities assert cause climate change) would have decreased *at all* in the absence of BP p.l.c.'s alleged contacts with California or the United States.  Based on the amended complaints' citations to the 2014 and 2015 articles discussed in the next section, the Cities likely will seek to rely on an "attribution science" theory to try to prove BP p.l.c.'s individual contribution to climate change.  However, that theory cannot fill this jurisdictional void because it does not show that the alleged sea-level-rise harm would not have arisen but for the fossil fuels

1    extracted from California or the United States by indirect subsidiaries of BP p.l.c., which could have

2    made at most a de minimis contribution to emissions, if that attribution science theory is believed.

3    **C.**    **How The Cities Might Estimate BP p.l.c.'s Purported Contribution To The Nuisance**

4          The Cities assert that defendants "are substantial contributors to the public nuisance of global

5    warming that is causing injury to Plaintiffs."  (*Id.* ¶ 10.)  Indeed, the Cities claim defendants'

6    "contribute[] measurably to global warming and to sea level rise" (*id.*), and they may claim they have

7    quantified defendants' individual and collective contributions to global greenhouse gas emissions and

8    associated global warming and sea-level rise.  BP p.l.c. disagrees.  But as purported support for the

9    Cities' position, the amended complaints numerically rank each defendant on a supposed list of the

10   "largest cumulative producers of fossil fuels" that plaintiffs copied from a 2014 study by Richard

11   Heede in the purported field of climate "attribution science" (*id.* ¶ 94.b & n.71), and cite a 2015 "peer-

12   reviewed scientific" study (*id.* ¶ 94.f & n.74) entitled "The Climate Responsibilities of Industrial

13   Carbon Producers," which, building on Heede's earlier work, claims to quantify "the responsibility of

14   industrial carbon producers" for "anthropogenic climate change."  (Peter C. Frumhoff, Richard Heede,

15   Naomi Oreskes, *The Climate Responsibilities of Industrial Carbon Producers*, 132 Climatic Change

16   157, 161-62 & Fig. 2 (2015), *available at* https://link.springer.com/content/pdf/10.1007%2Fs10584-

17   015-1472-5.pdf.)  The Cities' lead counsel has called the methodology utilized in these studies

18   "hugely important" because it "individualizes responsibility" for climate change "in a way that had not

19   been done before."  (Dan Zegart, *Want To Stop Climate Change? Take the Fossil Fuel Industry to

20   Court*, The Nation, May 12, 2014, available at https://www.thenation.com/article/want-stop-climate-

21   change-take-fossil-fuel-industry-court/.)  In particular, according to the Cities' attorney, these

22   attribution science methodologies "help[] assign blame" by providing "a list with names and numbers"

23   (*id.*)—a list that "demonstrate[s] how much of the carbon dioxide and methane from the combustion of

24   fossil fuels in the atmosphere is attributable to Exxon and Chevron and other particular companies

25   going back to the 1800s."  (*Climate Reparations: Companies to Be Liable for "Harm" "Going Back

26   to the 1800s,"* YouTube (Feb. 18, 2016), https://www.youtube.com/watch?v=KFsGJ1-iEo8.)

27          As noted, BP p.l.c. disagrees with these studies, which it views as flawed in numerous respects.

28   (*Supra* note 2.)  But if their estimates are accepted *arguendo* solely for purposes of this motion, the

studies would attribute to all defendants as a group 11% (FAC ¶ 94.c), and to BP p.l.c. individually 2.47%, of global "industrial" greenhouse gas emissions between 1854 and 2010 (Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers, 1854-2010*, 122 Climatic Change 229, 237 Table 3 (2014) ("Heede 2014"), *available at* https://link.springer.com/content/pdf/10.1007%2Fs10584-013-0986-y.pdf).  The studies do not supply evidence of any causal relationship between BP p.l.c.'s (or any defendant's) claim-related California or U.S. activities for purposes of establishing personal jurisdiction, for at least the following reasons:

*First*, the greenhouse gas emissions the studies would attribute to BP p.l.c. are not based on its California or U.S. production of fossil fuels at all, but instead on estimates of *worldwide* fossil fuel and cement production by each of what the studies call ninety "Carbon Majors," including data on oil, gas, and coal production by worldwide affiliates of BP p.l.c. (or predecessor entities).[4]  (*Id.* at 231-32; *see also* Richard Heede, *Carbon Majors: Accounting for Carbon and Methane Emissions 1854-2010 Methods and Results Report* at 9–15 (Apr. 7, 2014), *available at* http://carbonmajors.org/wp/wp-content/uploads/2014/04/MRR-9.1-Apr14R.pdf.)  Thus, the studies do not even purport to reveal any information about emissions linked to any producer's California or U.S. activities in particular.

*Second*, the emissions the studies would attribute to BP p.l.c. are not limited to *claim-related* production, because they are based on the authors' estimates of production going back to 1913.  (*Id.*)  The Cities, however, claim that defendants have tortiously produced and promoted fossil fuel products since the late 1970s and early 1980s, when they allege defendants first knew of the dangers of global warming.  (FAC ¶ 2.)  If the Cities' centuries-long studies of worldwide production were limited to counting only BP p.l.c.'s imputed California or U.S. production during the years 1975 to 2010, plainly they would attribute a mere fraction of a fraction of their 2.47% of global emissions to BP p.l.c.

*Third*, in estimating each producer's share of industrial *emissions*, the Cities' studies reveal nothing about any causal relationship between fossil fuel production and the global warming and sea-

---

[4] These studies even impute production to BP p.l.c. by business entities that BP p.l.c. did not own when the production occurred.  For example, Amoco did not join BP p.l.c until 1998, yet the studies count that company's pre-1998 production in BP p.l.c.'s total.  As noted, BP p.l.c. does not contest that imputation solely for purposes of this motion.  (*Supra* note 1.)

level rise *injuries* the Cities complain of here.  Indeed, in a more recent study, which introduces new flaws on top of those in the original ones, Heede and collaborating authors extend their original analysis to attempt to quantify not merely individual contributions to *emissions*, but also to changes in global mean surface *temperatures* and global *sea levels*.  (Ekwurzel, B., J. Boneham, M.W. Dalton, R. Heede, R.J. Mera, M.R. Allen, & P.C. Frumhoff, *The Rise in Global Atmospheric CO2, Surface Temperature and Sea Level from Emissions Traced to Major Carbon Producers*, 144 Climatic Change 579 (2017), *available at* https://link.springer.com/content/pdf/10.1007%2Fs10584-017-1978-0.pdf.)  This study claims to attribute approximately 1.5% and 0.5% of historical global sea-level rise to emissions from BP p.l.c.'s worldwide fossil fuels production over the periods 1880-2010 and 1980-2010, respectively.  (*Id.* at 585 Fig. 2.)  Again, this study does not even purport to find any link between BP p.l.c.'s California or U.S. production and the Cities' claimed injuries.[5]

## **Argument**

### **THE AMENDED COMPLAINTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER BP P.L.C.**

Due process limits the power of a court "to render a valid personal judgment against a nonresident defendant."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  The Supreme Court "recognize[s] two types of personal jurisdiction:  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779-80.  General jurisdiction permits a court to hear "*any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Id.* at 1780.  By

---

[5] Of course, all of these contribution percentages would have to be further slashed if they were to represent BP p.l.c.'s purportedly *tortious* contribution to the Cities' claimed injuries.  The Cities do not allege that *all* fossil fuel production would have ceased in the late 1970s or early 1980s but for defendants' supposed efforts to cast doubt on climate science.  In view of built-in structural demand for fossil fuels (*e.g.*, internal combustion engines and industrial machinery) and the lack of ready alternatives, any drop in BP p.l.c.'s production would surely have been replaced by another producer.  Even if the Cities deny this, however, they still must concede that a very substantial share of the demand for fossil fuel production would have persisted even in the absence of any claimed tortious activity.  Thus, only a mere fraction of BP p.l.c.'s imputed California and U.S. contributions to global anthropogenic greenhouse gas emissions can even theoretically be regarded as a potentially *tortious* contribution.

- 7 -

BP P.L.C.'S AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINTS FOR LACK OF PERSONAL JURISDICTION
Case No. 3:17-cv-06011-WHA; Case No. 3:17-cv-06012-WHA

1   contrast, a court exercising specific jurisdiction may only hear suits that "arise[e] out of or relat[e] to

2   the defendant's contacts with the *forum*." *Id.*

3        The plaintiff bears the burden of establishing that jurisdiction is proper, *Ranza v. Nike, Inc.*,

4   793 F.3d 1059, 1068 (9th Cir. 2015), and must make "a prima facie showing of jurisdictional facts to

5   withstand the motion to dismiss," *id.* (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

6   1066, 1073 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,

7   1127 (9th Cir. 2010))).  In evaluating whether the plaintiff has met this burden, the court may not take

8   as true "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions

9   unsupported by *specific factual allegations*." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)

10  (emphasis added); *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 943 (N.D. Cal. 2014).  Nor

11  may the court "assume the truth of allegations in a pleading which are contradicted by affidavit."

12  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  In those instances, the

13  plaintiff "cannot 'simply rest on the bare allegations of its complaint'" to meet its burden to establish

14  the essential jurisdictional facts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

15  Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)); *see*

16  *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979 (N.D. Cal. 2016) (the plaintiff's prima facie

17  showing requires "producing admissible evidence which, if believed, would be sufficient to establish

18  the existence of personal jurisdiction").

19       Here, the Cities have not pleaded and cannot prove the facts needed to establish either general

20  or specific jurisdiction over BP p.l.c.  The amended complaints set forth a laundry list of purported

21  "[c]onnections" with California and other U.S. states, apparently in an effort to invoke alternative

22  jurisdictional theories.  (FAC at 10:18, ¶¶ 35-50.)  The first theory is that jurisdiction exists under

23  California's long-arm statute, which permits jurisdiction as broadly as due process allows.  *See Axiom*

24  *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) ("the jurisdictional analyses

25  under [California] state law and federal due process are the same" (quoting *Mavrix Photo, Inc.*, 647

26  F.3d at 1223)).  The second is that jurisdiction exists under the so-called federal long-arm statute of

27  Federal Rule of Civil Procedure 4(k)(2).  That Rule permits a federal court to exercise jurisdiction over

28  a foreign defendant for a claim arising under federal law, if the defendant is not subject to personal

- 8 -

BP P.L.C.'S AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINTS FOR LACK OF PERSONAL JURISDICTION
Case No. 3:17-cv-06011-WHA; Case No. 3:17-cv-06012-WHA

1    jurisdiction in any state and the exercise of jurisdiction comports with due process.  *Id.* at 1072.  The

2    due process analysis under Rule 4(k)(2) is "nearly identical to traditional personal jurisdiction analysis

3    with one significant difference:  rather than considering contacts between [the defendant] and the

4    forum state, [the court] consider[s] contacts with the nation as a whole."  *Id.* (quoting *Holland Am.*

5    *Line Inc. v. Warstila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007)).  The rule applies only in "rare

6    situations" where the defendant has "extensive contacts to the country."  *EcoDisc Tech. AG v. DVD*

7    *Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1086 n.6 (C.D. Cal. 2010); *see Holland Am. Line*

8    *Inc.*, 485 F.3d at 462 ("[I]n the fourteen years since Rule 4(k)(2) was enacted, none of our cases has

9    countenanced jurisdiction under the rule.").

10          Exercising jurisdiction over BP p.l.c. in this case would be improper under either theory, for

11   the same set of reasons, as shown below.

12   **A.     BP p.l.c. Is Not "At Home" (And Thus Subject To General Jurisdiction) In The Forum**

13          A foreign corporation is not subject to general jurisdiction in a forum unless its "affiliations

14   with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum

15   State."  *Daimler AG*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

16   564 U.S. 915, 919 (2011)).  Except in "an exceptional case," a corporation is only "at home" in a

17   forum where it is incorporated or has its principal place of business.  *Id.* at 760-62 & n.19; *Ranza*, 793

18   F.3d at 1069.  Thus, even a large corporation that operates—and records "sizable" sales—in many

19   places "can scarcely be deemed at home in all of them," as that result would improperly convert "at

20   home" into a "doing business" test.  *Daimler AG*, 134 S. Ct. at 761-62 & n.20.  Rather, a foreign

21   corporation's affiliations with the forum must be "comparable to a domestic enterprise in that State"

22   for it to be considered at home.  *Id.* at 758 n.11.  A plaintiff who invokes general jurisdiction "must

23   meet an 'exacting standard' for the minimum contacts required," because of the "much broader"

24   assertion of judicial authority the foreign defendant faces.  *Ranza*, 793 F.3d at 1069 (quoting

25   *CollegeSource, Inc.*, 653 F.3d at 1074).

26          There can be no reasonable debate that BP p.l.c. is not at home in California or in the United

27   States.  As the Cities admit, BP p.l.c. is a "multinational, vertically integrated oil and gas company"

28   that is "registered in England and Wales with its headquarters in London, England."  (FAC ¶ 16.)

- 9 -

1    Nothing in the amended complaints would justify treating this as an "exceptional case," moreover.

2    The Cities do not allege, for example, that California or the United States has become BP p.l.c.'s

3    global nerve center, nor even that BP p.l.c. itself operates in the United States.[6]

4        Far from alleging facts that could establish that BP p.l.c. is at home in California or the United

5    States, the amended complaints merely allege that subsidiaries of BP p.l.c. have done or are doing

6    business here, precisely as the plaintiff in *Daimler AG* alleged.  For example, the Cities allege that

7    subsidiaries of BP p.l.c. produce and sell fossil fuel products to California and U.S. residents; operate

8    California port facilities where they receive crude oil; transport Alaskan crude oil to California;

9    promote gasoline sales by offering credit cards and discounts; license the ARCO trademark and brand

10   to California gasoline stations; and produce oil in the Gulf of Mexico.  (FAC ¶¶ 35-50.)  Even

11   imputing these subsidiaries' U.S. business activities to BP p.l.c. (as the Court assumed *arguendo* in

12   *Daimler AG*), they *at most* show that BP p.l.c. does substantial, continuous business in California and

13   other states, just as Daimler did as California's "largest supplier of luxury vehicles" and through its

14   multiple California-based facilities, *see* 134 S. Ct. at 752, and just as BNSF Railway Company did in

15   Montana, where its 2,000 workers and 2,000 miles of railroad track did not render it "at home," *see*

16   *BNSF Ry. Co.*, 137 S. Ct. at 1559; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir.

17   2014) ("This is not such an exceptional case," where foreign defendant had "no offices, staff, or other

18   physical presence in California, and it [was] not licensed to do business in the state").  More is needed

19   to render a foreign corporation at home.  The amended complaints here provide nothing more,

20   however.

21       The Cities have not met, and cannot meet, their "exacting" burden to show that BP p.l.c. is at

22   home in California or the United States.

23

24   ───────────────

[6] In the case the Supreme Court points to as "exemplif[ying]" the "exceptional case," a Philippines
25   corporation was forced to cease operating in its home nation during the Japanese occupation in World
     War II, and its president moved to Ohio, where he kept an office, maintained the company's files, and
26   oversaw the company's operations.  *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952);
     *see BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (discussing *Perkins*).  General jurisdiction
27   in Ohio over the foreign corporation was proper in these unusual circumstances because it effectively
     had moved its principal place of business there, if only temporarily, making Ohio "the center of the
28   corporation's wartime activities."  *Daimler AG*, 134 S. Ct. at 756 & n.8.

**B.     Nor Is BP p.l.c. Subject To Specific Jurisdiction For This Claim**

In contrast with general jurisdiction, for a forum to assert specific jurisdiction over a nonresident, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations*, 564 U.S. at 919). More specifically, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Id.* (quoting *Daimler AG*, 134 S. Ct. at 754). In accord with the Supreme Court's direction, the Ninth Circuit recognizes "three requirements for a court to exercise specific jurisdiction over a nonresident defendant":

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum";
> (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc.*, 874 F.3d at 1068 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)); *accord Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802.

None of the requirements for exercising specific jurisdiction is met here.

**1.     The Claim Does Not Arise out of or Relate to BP p.l.c.'s Forum Activities, Even Imputing All Claim-Related Activities of Indirect Subsidiaries to BP p.l.c.**

A claim arises out of or relates to the defendant's forum-related activities only if the plaintiff "would not have sustained her injury, 'but for'" that activity. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051-52 (9th Cir. 1997); *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) ("the Court considers whether [the] plaintiffs' claims would have arisen but for [the defendant]'s contacts with California"); *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 818 (N.D. Cal. 2008) ("arises out of or relates to" prong "requires a showing of 'but for' causation—plaintiff must demonstrate that she would not have been injured but for defendants' conduct directed toward her in the forum"). Under this "but for" test, the plaintiff must present evidence showing that other contributing forces would not

- 11 -

still have produced his or her injury in the absence of the defendant's suit-related forum contacts. *Rashidi v. Veritiss, LLC*, No. 2:16-cv-04761-CAS (JPRx), 2016 WL 5219448, at *6 (C.D. Cal. Sept. 19, 2016). Where the plaintiff presents "no evidence" that the defendant's forum activities were a "necessary" cause of that injury, the requirement is not met. *Unocal Corp.*, 248 F.3d at 925; *accord Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (where the defendant's California activities did not cause the plaintiffs' alleged injuries, no "adequate link" supported specific jurisdiction).

In *Doe v. Unocal Corp.*, for example, Burmese farmers alleged they suffered human rights violations at the hands of a French energy corporation (Total S.A.), among others, in furtherance of a gas pipeline project in Burma. *Id.* at 920. They claimed Total was subject to specific jurisdiction in California by virtue of Total's joint venture agreement with its co-venturer on the pipeline project, a California corporation (Unocal Corp.). The court held the plaintiffs had failed to meet their burden under the but-for test because they "present[ed] no evidence . . . suggesting that the pipeline project would not have gone forward without Total's dealings with Unocal" in California. *Id.* at 925. Total's California contacts were, in short, "not necessary to the initiation of the project" that allegedly led to the plaintiffs' injuries. *Id.*

Where the defendant conducts business on a national or global scale, the plaintiff must show that the defendant's *forum* activities, in particular, were a but-for cause of its injuries. In *Sullivan v. Ford Motor Co.*, No. 16-cv-03505-JST, 2016 WL 6520174 (N.D. Cal. Nov. 3, 2016), for example, the court held that Ford was not subject to specific jurisdiction in California for a claim alleging injury from a defectively designed truck, despite Ford's "nationwide marketing, promotion, and distribution of cars and trucks," its active marketing of vehicles in California, and its sale of over 200,000 vehicles in the state in one year, because the specific truck that injured the plaintiff was not designed, made, or sold to a Ford dealership in California. *Id.* at *2-3. Given these facts, the court concluded, "there [was] every reason to think that [the plaintiff]'s injury would have occurred regardless of Ford's contacts with California. In other words, [the plaintiff] cannot satisfy the Ninth Circuit's 'but for' test." *Id.* at *3. *Sullivan* is in accord with the Supreme Court's more recent holding in *Bristol-Myers Squibb Co.*, that BMS could not be subjected to specific jurisdiction in California for injury claims involving its drug Plavix, brought by patients who obtained Plavix through sources outside of

California.  *See* 137 S. Ct. at 1778.  Even though BMS sold almost 187 million Plavix pills in California, taking in more than $900 million, and employed 250 sales reps in California, the Court held that there was no "adequate link between the State and the nonresidents' claims," because the specific pills that injured the plaintiffs were not developed, made, labelled, packaged, or sold to them in California.  *Id.* at 1778, 1781.  To permit jurisdiction over these claims merely because BMS also sold Plavix to patients in California would, the Court explained, "resemble[] a loose and spurious form of general jurisdiction" that could not be squared with its precedents.  *Id.* at 1781.

Forum activities also fail the but-for test when actors other than the defendant contributed to the plaintiff's injury and the plaintiff accordingly cannot show that its injury would have been avoided but for the forum-related conduct of the defendant.  In *Terracom v. Valley National Bank*, 49 F.3d 555 (9th Cir. 1995), for example, the court held that a Kentucky bank's act of signing a "certificate of sufficiency" without properly investigating the financial strength of a payment bond surety for a California public works project was not a but-for cause of the plaintiff's (a construction subcontractor) injury because a third party, the federal officer who awarded the contract, had "the sole responsibility of determining the acceptability of an individual surety," considered factors other than the bank's certificate in his evaluation, and might have approved the surety even if the bank had not signed the certificate.  *Id.* at 561.  Put simply, an actor other than the bank contributed to the plaintiff's injury, making it impossible to say that the plaintiff's injury would not have arisen but for the bank's contacts with California.  *Id.*  Similarly, in *Doe v. American National Red Cross*, the court held that the failure of a federal official charged with ensuring the safety of the blood supply to bar high-risk groups from donating blood, to publicize the risks of blood transfusions, and to encourage blood companies to implement certain blood safety tests was not a but-for cause of the plaintiff's injury because other actors had greater control over the flow of blood and blood products into the forum state.  112 F.3d at 1051 ("Therefore, it cannot be said that [the plaintiff] would not have sustained her injury, 'but for' [the official's] alleged misconduct.").

a.    **The amended complaints do not allege BP p.l.c.'s California or U.S. activities are a but-for cause of the Cities' claimed injury**

Here, the Cities have not alleged, either factually or even in conclusory terms, that BP p.l.c.'s California or U.S. activities are a but-for cause of the "global warming-induced sea level rise" they say is damaging their coastlines.  Indeed, not only is the concept of but-for causation entirely missing from the amended complaints, but the Cities' allegations leave no doubt that their theory is that the alleged public nuisance resulted from *all* human contributions to increased greenhouse gas levels in the atmosphere, including but certainly not limited to the *worldwide* production of fossil fuels by defendants and others.  (FAC ¶¶ 16-18 (alleging BP p.l.c. is "a multinational, vertically integrated oil and gas company" that "is responsible for" all "past and current production and promotion of fossil fuel products" by all of "its subsidiaries"); *id.* ¶ 10 (each defendant is a "substantial contributor[] to the public nuisance of global warming" based on its global "cumulative production of fossil fuels").)  As the Court has observed, "greenhouse gases emanating from overseas sources are equally guilty (perhaps more so) of causing plaintiffs' harm" as are gases emanating from the consumption of defendants' fuels in the United States.  (Order Denying Mots. To Remand at 7:11-13, ECF No. 134.)  But alleging that *all worldwide* fossil fuel production "substantially contributed" to the purported nuisance is a far stretch from alleging that *BP p.l.c.'s California or U.S.* production is a but-for cause of the nuisance.  In particular, the amended complaints do not allege, and the Cities cannot show, that if BP p.l.c. had reduced or even halted its indirect subsidiaries' extraction activities in California or the United States as a whole, worldwide greenhouse gas emissions would have decreased, curtailing global warming and sea-level rise.  Nothing in the amended complaints negates the far more plausible inference that other suppliers simply would have replaced BP p.l.c.'s limited U.S. production to satisfy the durable demand for fossil fuels, which users would have combusted at the same rate.  The Cities' causal theory is thus jurisdictionally deficient under *Bristol-Myers Squibb Co.* and *Sullivan*, which teach that nationwide or global activities by a large corporation—even activities of the sort the plaintiff complains of—do not establish the requisite but-for causal link between the defendant's in-forum activities and the plaintiff's injury.

- 14 -

1    Also negating the essential but-for causation is the amended complaints' allegation that

2    innumerable other fossil fuel producers besides BP p.l.c. have contributed to the alleged nuisance.  The

3    Cities admit they have only sued a handful of the world's "largest cumulative producers of fossil fuels

4    worldwide."  (FAC ¶ 94.b.)  And they aver that global warming results not from the emissions

5    attributable to any single producer's production, but rather because greenhouse gases from fossil fuels

6    produced by *all* producers—defendant and non-defendant—combine in the global atmosphere where

7    they cannot be physically traced to an individual producer.  (*Id.* ¶ 140 ("emissions of greenhouse gases

8    from the fossil fuels [each defendant] produces combines [sic] with the greenhouse gas emissions from

9    fossil fuels produced by the other Defendants, *among others*, to result in dangerous levels of global

10   warming") (emphasis added).)  These allegations, too, are deficient to meet the Cities' burden to plead

11   that BP p.l.c.'s California or U.S. activities are a but-for cause of their claimed sea-level rise harm,

12   because, as in *Terracom* and *Doe v. American National Red Cross*, it cannot be said that contributions

13   of actors other than BP p.l.c. would not have been sufficient to cause that harm but for BP p.l.c.'s

14   California or U.S. activities.

15   In sum, the amended complaints allege BP p.l.c., the other defendants, and myriad others,

16   acting around the globe, have produced massive amounts of fossil fuels, yet nowhere allege that the

17   Cities "would not have sustained [their] injury" but for BP p.l.c.'s forum activities.  *See Am. Nat'l Red*

18   *Cross*, 112 F.3d at 1051-52.  From all that appears in the amended complaints, therefore, "there is

19   every reason to think that [the Cities'] injury would have occurred regardless of [BP p.l.c.'s] contacts

20   with California" and the United States.  *See Sullivan*, 2016 WL 6520174, at *3.  The amended

21   complaints accordingly fail to plead that the Cities' claims arise out of or relate to BP p.l.c.'s forum

22   activities.

23        **b.    If the Cities rely on "attribution science," that methodology**
          **likewise is not evidence that BP p.l.c.'s forum contacts are a**
24        **but-for cause of the claimed injury**

25   The Cities cannot meet their burden on this motion because, as shown, the amended complaints

26   do not *plead* any jurisdictionally sufficient nexus between BP p.l.c.'s alleged in-forum activity and the

27   Cities' claimed injuries.  If the Cities try to overcome their pleadings' deficiencies by turning to

28   attribution science, that theory will not help them either.  As explained above, those studies seek to

- 15 -

1    estimate BP p.l.c.'s attributed share of emissions (i) only on a worldwide basis, (ii) only since the

2    dawn of the Industrial Revolution, and (iii) without connecting that alleged *emissions* contribution to

3    the Cities' claimed sea-level-rise harms.  (*Supra* pp. 7-8.)  The studies thus furnish no evidence to

4    establish the requisite causal link between BP p.l.c.'s California or U.S. activities and the Cities'

5    injuries.  To the contrary, based on the Cities' record, there is every reason to think the Cities' injury

6    would be no different regardless of BP p.l.c.'s insubstantial forum-related contribution.

7           Indeed, the Cities themselves have said as much.  They argued that far more massive amounts

8    of fossil fuel production are not a but-for cause of their injury, in opposing subject matter jurisdiction

9    under the Outer Continental Shelf Lands Act ("OCSLA").  In particular, the Cities argued offshore

10   production on the OCS, which has constituted up to one-third of *all* domestic oil and gas production,

11   "is not a but-for cause of the People's injuries."  (Pl.'s Reply Supp. Mot. Remand at 20-21, ECF No.

12   91.)  The Cities called OCS production, which dwarfs BP p.l.c.'s imputed forum production, "only a

13   small subset" of the activities on which their nuisance claim is based.  (*Id.* at 20.)  And they flatly

14   asserted that "the People *would* have a claim even absent any OCS conduct."  (*Id.* at 21.)  *A fortiori*,

15   the Cities would have a claim even absent BP p.l.c.'s California and U.S. conduct.

16                    **c.    Permitting specific jurisdiction on the basis of these tenuous links with**
                              **the forum would subject BP p.l.c. to jurisdiction in every state, a result**
17                            **that cannot be squared with recent Supreme Court decisions**

18          As discussed above, in two recent decisions the Supreme Court made abundantly clear that

19   large national or international businesses are not, by virtue of their sprawling operations, subject to

20   jurisdiction everywhere on claims lacking an adequate causal nexus to their forum activities.  First, in

21   *Daimler AG*, the Court held that Daimler's extensive national vehicle distribution operations (which

22   the Court imputed *arguendo* to Daimler), multiple California facilities, and California sales accounting

23   for 2.4% of its worldwide sales, did not render Daimler "at home" in California because, were the law

24   otherwise, "the same global reach would presumably be available in every other State in which

25   MBUSA's sales are sizable" and would destroy foreign companies' ability to structure their operations

26   to allow for reasonably predictable jurisdictional outcomes.  134 S. Ct. at 761-62.  Then, in *Bristol-*

27   *Myers Squibb Co.*, the Court held that BMS' sales of Plavix pills in every state, including over $900

28   million in California, which accounted for more than 1% of the company's nationwide sales revenue

1  from all products, did not subject BMS to specific jurisdiction in California for claims by patients who

2  obtained their medication outside California, because exercising specific jurisdiction in the absence of

3  "any adequate link between the State and the nonresidents' claims" would "resemble[] a loose and

4  spurious form of general jurisdiction."  137 S. Ct. at 1781.

5      Asserting jurisdiction over BP p.l.c. in this action would directly disregard the teachings of

6  these controlling decisions, because it would effectively authorize specific jurisdiction everywhere.

7  This is true even if some quantum or character of in-forum conduct less than a but-for cause could

8  ever satisfy the "arises out of or relates to" requirement, which, under controlling Ninth Circuit case

9  law, it cannot do.  Subsidiaries of integrated global energy businesses such as these defendants operate

10  around the nation and world.  If a forum nexus as thin as the Cities have presented here sufficed to

11  require BP p.l.c. to defend this claim in this Court, the same "global reach" would presumably be

12  available everywhere BP p.l.c.'s subsidiaries have operations, which would impermissibly "resemble[]

13  a loose and spurious form of general jurisdiction" even broader than pre-*Daimler AG* cases allowed.

### d.  Describing the operational details of indirect subsidiaries is not a substitute for pleading and proving the required but-for causation

16      In amending their complaints, the Cities added new allegations that describe operational details

17  of various California and U.S. activities of indirect subsidiaries of BP p.l.c.  For example, the amended

18  complaints describe certain California and U.S. refining operations; pipeline, distribution, and other

19  logistics operations; and production activities in the Gulf of Mexico and Alaska.  (FAC ¶¶ 33, 38-48.)

20  The Cities seemingly hope to obscure their inability to plead and prove necessary but-for causation by

21  layering on heavy embroidery about the operational facts of the California and U.S. connections upon

22  which they rely.  The Cities may not cure their deficient causation case merely by pointing to more or

23  different contacts, however; the Supreme Court squarely rejected such a "sliding scale approach"

24  under which "the strength of the requisite connection between the forum and the specific claims at

25  issue is relaxed if the defendant has extensive forum contacts."  *Bristol-Myers Squibb Co.*, 137 S. Ct.

26  at 1781.  Thus, whatever the nature and extent of BP p.l.c.'s imputed forum contacts, the Cities'

27  burden to satisfy the distinct requirement of proving an adequate but-for causal nexus remains the

28  same.  *Id.*

More fundamentally, dressing up the fossil fuel production that is the gravamen of these claims with a hodgepodge of other supposed forum "connections" does not help the Cities meet their burden to demonstrate that BP p.l.c.'s imputed forum activities are a but-for cause of their claimed harm.  This is so because embroidery about logistics and marketing efforts—activities such as importing Alaskan crude oil to California, and maintaining a company Web site that promotes gasoline sales—does not enhance in any way the Cities' own estimation of the contribution BP p.l.c.'s forum activities made to climate change-induced sea-level rise, which rests entirely on BP p.l.c.'s extraction of oil and natural gas.  Thus, even if it were true that, for example, BP p.l.c. operates California port facilities to receive crude oil and advertises gasoline on its Web site accessible in California, the total contributions that *all* of BP p.l.c.'s imputed California and U.S. activities made, under the Cities' attribution analysis, to worldwide greenhouse gas emissions from human causes could at most be a fraction of a fraction of the 2.47% that the Cities attribute to BP p.l.c.'s worldwide, beginning-of-time production.  That miniscule contribution is inadequate to constitute a but-for cause for all the reasons discussed above; embellishing them with operational details cannot bring the Cities any closer to showing that the claimed nuisance would have been avoided but for BP p.l.c.'s forum activity.

## 2. Exercising Jurisdiction over BP p.l.c. Would Be Unreasonable

Even if the first two requirements for specific jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  To be reasonable, jurisdiction "must comport with 'fair play and substantial justice.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  The Ninth Circuit has identified several factors to be considered in addressing the question of reasonableness, some of which are "no longer weighed heavily."  *Id.* at 1323-24 (noting reduced importance of "(5) the most efficient judicial resolution of the controversy" and "(6) the importance of the forum to the plaintiff's interest in convenient and effective relief").

The Supreme Court, meanwhile, instructs that the "primary concern" in determining whether jurisdiction is present is "the burden on the defendant."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen Corp.,* 444 U.S. at 292).  Relevant burdens include not only "the practical problems resulting from litigating in the forum," but also "the more abstract matter of

- 18 -

BP P.L.C.'S AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINTS FOR LACK OF PERSONAL JURISDICTION
Case No. 3:17-cv-06011-WHA; Case No. 3:17-cv-06012-WHA

submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* Concern for the latter recognizes that restrictions on personal jurisdiction are in part "a consequence of territorial limitations on the power of the respective States" and nations. *Id.* These "federalism" and "comity" interests at times "may be decisive." *Id.* As the Court has explained, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.* at 1780-81. These recent Supreme Court analyses effectively blend and elevate the importance of four of the Ninth Circuit's reasonableness factors: "(2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute"; and "(7) the existence of an alternative forum." *See Panavision Int'l, L.P.*, 141 F.3d at 1323.

Jurisdiction over BP p.l.c. would be unreasonable under all of these factors because using U.S. common law to regulate *worldwide* fossil fuel production by hailing an English parent company that does not do business in the state or nation into a California forum would elevate the state's sovereignty beyond any appropriate bounds. The state admittedly has an interest in protecting its coastal property. But the Cities' claims purportedly reach all worldwide fossil fuel production by BP p.l.c. and the other defendants, and neither California nor the United States has any greater interest in applying its own tort law to that production than any other state or nation would. The sovereignty of the UK courts with respect to this controversy, moreover, implies a limitation on the sovereignty of the California and U.S. courts, *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780, particularly as UK courts resist "uninhibited approach[es] to personal jurisdiction" that draw their local corporations into existential litigation in multiple fora, *Daimler AG*, 134 S. Ct. at 763.

These concerns are real and practical, not merely theoretical. If jurisdiction were reasonable in this case, and this Court rendered a judgment effectively regulating defendants' worldwide fossil fuel production, thereby reshaping global energy policy, that exercise might then be repeated in the courts of every other state and nation that have similarly tenuous claims to jurisdiction over BP p.l.c., with

- 19 -

BP P.L.C.'S AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINTS FOR LACK OF PERSONAL JURISDICTION
Case No. 3:17-cv-06011-WHA; Case No. 3:17-cv-06012-WHA

innumerable conflicting outcomes.  California and the United States do not have any unique interest in this claim involving conduct and alleged effects dispersed throughout the globe.

<u>**Conclusion**</u>

For all the foregoing reasons, BP p.l.c. respectfully requests that the Court grant this motion and dismiss the first amended complaints as against BP p.l.c. for lack of personal jurisdiction.

Dated:  June 20, 2018.                              ARNOLD & PORTER KAYE SCHOLER LLP

By:   /s/ Jonathan W. Hughes
Jonathan W. Hughes
Matthew T. Heartney
John D. Lombardo
Philip H. Curtis
Nancy Milburn

Attorneys for Defendant BP p.l.c.