| | |
|---|---|
| CITY OF OAKLAND | CITY AND COUNTY OF SAN FRANCISCO |
| BARBARA J. PARKER, State Bar #069722 | DENNIS J. HERRERA, State Bar #139669 |
| City Attorney | City Attorney |
| MARIA BEE, State Bar #167716 | RONALD P. FLYNN, State Bar #184186 |
| Chief Assistant City Attorney | Chief Deputy City Attorney |
| ZOE M. SAVITSKY, State Bar #281616 | YVONNE R. MERÉ, State Bar #173594 |
| Supervising Deputy City Attorney | Chief of Complex and Affirmative Litigation |
| MALIA MCPHERSON, State Bar #313918 | ROBB W. KAPLA, State Bar #238896 |
| Deputy City Attorney | Deputy City Attorney |
| One Frank H. Ogawa Plaza, 6th Floor | MATTHEW D. GOLDBERG, State Bar |
| Oakland, California 94612 | #240776 |
| Telephone: (510) 238-3601 | Deputy City Attorney |
| Facsimile: (510) 238-6500 | City Hall, Room 234 |
| Email: mmcpherson@oaklandcityattorney.org | 1 Dr. Carlton B. Goodlett Place |
| | San Francisco, California 94102-4602 |
| | Telephone: (415) 554-4748 |
| | Facsimile: (415) 554-4715 |
| | Email: matthew.goldberg@sfcityatty.org |
| | *[Additional Counsel Listed on Signature Page]* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Oakland City Attorney BARBARA J. PARKER, | First-Filed Case No. 3:17-cv-6011-WHA Related to Case No. 3:17-cv-6012-WHA |
| Plaintiffs, | **THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND** |
| v. | |
| BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS COMPANY, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10, | Date:  April 22, 2021 Time:  8:00 AM Place: Courtroom 12, 19th Floor |
| Defendants. | |

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Francisco City Attorney DENNIS J. HERRERA, | Case No. 3:17-cv-6012-WHA |
| Plaintiffs, | |
| v. | |
| BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS COMPANY, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10, | |
| Defendants. | |

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

1

## NOTICE OF RENEWED MOTION AND MOTION TO REMAND

2     TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3     PLEASE TAKE NOTICE THAT, on April 22, 2021, at 8:00 a.m., in the United States

4     District Court, Northern District of California, San Francisco Courthouse, Courtroom 12, 19th

5     Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Hon. William Alsup,

6     Plaintiff the People of the State of California by and through the City Attorney for the City of

7     Oakland and the City Attorney for the City and County of San Francisco ("the People") will and

8     hereby do move this Court for an order granting their renewed motion to remand to Superior Court.

9     This motion is based on this notice of renewed motion and motion, the accompanying

10    memorandum of points and authorities, the Declaration of Victor M. Sher in support of the motion,

11    the evidence and records on file in this action, and any other written or oral evidence or argument

12    that may be properly presented at or before the time this motion is decided.

13

14    Dated:  January 28, 2021                         Respectfully submitted,

15                                                     CITY OF OAKLAND

16                                                     By: *Barbara J. Parker*
                                                       BARBARA J. PARKER (State Bar #069722)
17                                                      City Attorney
                                                       MARIA BEE (State Bar #167716)
18                                                      Chief Assistant City Attorney
                                                       ZOE M. SAVITSKY, (State Bar #281616)
19                                                      Supervising Deputy City Attorney
                                                       MALIA MCPHERSON (State Bar #313918)
20                                                      Deputy City Attorney
                                                       One Frank H. Ogawa Plaza, 6th Floor
21                                                     Oakland, California
                                                       Tel.: (510) 238-3601
22                                                     Fax: (510) 238-6500
                                                       mmcpherson@oaklandcityattorney.org
23

24

25                                                     * Pursuant to Civ. L.R. 5-1(i)(3), the
                                                       electronic filer has obtained approval from
26                                                     this signatory.

27

28

---

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

i

**CITY AND COUNTY OF SAN FRANCISCO**

By: *Matthew D. Goldberg*
DENNIS J. HERRERA (State Bar #139669)
 City Attorney
RONALD P. FLYNN (State Bar #184186)
 Chief Deputy City Attorney
YVONNE R. MERÉ (State Bar #173594)
 Chief of Complex and Affirmative Litigation
ROBB W. KAPLA (State Bar #238896)
 Deputy City Attorney
MATTHEW D. GOLDBERG (State Bar #240776)
 Deputy City Attorney

City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Tel.: (415) 554-4748
Fax: (415) 554-4715
matthew.goldberg@sfcityatty.org

* Pursuant to Civ. L.R. 5-1(i)(3), the electronic filer has obtained approval from this signatory.

**SHER EDLING LLP**

VICTOR M. SHER (State Bar #96197)
MATTHEW K. EDLING (State Bar #250940)
MARTIN D. QUIÑONES (State Bar #293318)
ADAM M. SHAPIRO (State Bar #267429)
KATIE H. JONES (State Bar #300913)
NICOLE E. TEIXEIRA (State Bar #305155)

100 Montgomery St. Ste. 1410
San Francisco, CA 94104
Tel.: (628) 231-2500
vic@sheredling.com
matt@sheredling.com
marty@sheredling.com
adam@sheredling.com
katie@sheredling.com
nicole@sheredling.com

**ALTSHULER BERZON LLP**

MICHAEL RUBIN (State Bar #80618)

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND; CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARBARA J. CHISHOLM (State Bar #224656)
CORINNE F. JOHNSON (State Bar #287385)

177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
mrubin@altber.com
bchisholm@altber.com
cjohnson@altber.com

*Attorneys for The People*

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

III.    LEGAL STANDARDS ........................................................................................ 5

IV.     ARGUMENT ........................................................................................................ 6

        A.  The Ninth Circuit's decision in *San Mateo II* forecloses federal officer
            removal, as do similar decisions from other circuits. ................................. 6

            1.  Defendants are estopped from asserting federal officer jurisdiction. ................. 7

            2.  There is no basis for federal officer removal. .................................... 10

        B.  Defendants' remaining grounds for removal likewise fail. .................................... 13

            1.  The People's claims do not fall within the jurisdictional grant of OCSLA ....... 13

            2.  There is no enclave jurisdiction because the People's claims do not "arise"
                within federal enclaves. .................................................................... 18

            3.  Bankruptcy removal is inapplicable here ......................................... 20

VI.     CONCLUSION ................................................................................................... 22

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

iv

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ballard v. Ameron Int'l Corp.*,
   No. 16-CV-06074-JSC, 2016 WL 6216194 (N.D. Cal. Oct. 25, 2016).................................... 20

5

6

*Barrow Dev. Co. v. Fulton Ins. Co.*,
   418 F.2d 316 (9th Cir. 1969) ................................................................................................ 6

7

*Bates v. Union Oil Co. of Cal.*,
   944 F.2d 647 (9th Cir. 1991) ................................................................................................ 8

8

9

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
   405 F. Supp. 3d 947 (D. Colo. 2019)......................................................................... *passim*

10

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
   965 F.3d 792 (10th Cir. 2020) ............................................................... 1, 6, 10, 12

11

12

*City of Oakland v. BP P.L.C.*,
   No. 17-cv-6011, 2018 WL 3609055 (N.D. Cal. July 27, 2018) ................................ 5

13

*Brooklyn Union Expl. Co. v. Tejas Power Corp.*,
   930 F. Supp. 289 (S.D. Tex. 1996) ...................................................................... 16

14

15

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
   797 F.3d 720 ........................................................................................................ 11

16

*California v. BP P.L.C.*,
   No. 17-6011, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018) .................................. 4

17

18

*City & Cty. of S.F. v. PG&E Corp.*,
   433 F.3d 1115 (9th Cir. 2006) ............................................................................. 21

19

*City of Oakland v. BP P.L.C.*,
   325 F. Supp. 3d 1017 (N.D. Cal. 2018) ................................................................. 4

20

21

*City of Oakland v. BP P.L.C.*,
   969 F.3d 895 (9th Cir. 2020) .......................................................................... *passim*

22

*Coleman v. Trans Bay Cable, LLC*,
   No. 19-CV-02825-YGR, 2019 WL 3817822 (N.D. Cal. Aug. 14, 2019)............ 18, 19

23

24

*Collins v. D.R. Horton, Inc.*,
   505 F.3d 874 (9th Cir. 2007) ................................................................................. 9

25

*Cty. of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018) .............................................................. *passim*

26

27

*Cty. of San Mateo v. Chevron Corp.*,
   960 F.3d 586 (9th Cir. 2020) ............................................................................ *passim*

28

**THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA**

v

*Cty. of Santa Clara v. Atl. Richfield Co.*,
  137 Cal. App. 4th 292 (2006) ............................................................................ 4

*Dominion Expl. & Production, Inc. v. Ameron Int'l Corp.*,
  No. CIV.A. 07-3888, 2007 WL 4233562 (E.D. La. Nov. 27, 2007) ................................. 14, 15

*Durham v. Lockheed Martin Corp.*,
  445 F.3d 1247 (9th Cir. 2006) ........................................................................ 18

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
  26 F.3d 563 (5th Cir. 1994) ....................................................................... 14, 16

*Fireman's Fund Ins. Co. v. Stites*,
  258 F.3d 1016 (9th Cir. 2001) ....................................................................... 10

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) ......................................................................... 6

*Gilstrap v. United Air Lines, Inc.*,
  709 F.3d 995 (9th Cir. 2013) ........................................................................ 17

*Goto v. Whelan*,
  No. 20-cv-01114 (HSG), 2020 WL 4590596 (N.D. Cal. Aug. 11, 2020) ........................ 19

*Hammond v. Phillips 66 Co.*,
  No. 14-CV-119-KS, 2015 WL 630918 (S.D. Miss. Feb. 12, 2015) .......................... 17

*Harmston v. City & Cty. of S.F.*,
  627 F.3d 1273 (9th Cir. 2010) ........................................................................ 9

*Hemphill v. Transfresh Corp.*,
  No. C-98-0899-VRW, 1998 WL 320840 (N.D. Cal. June 11, 1998) ........................... 6

*Hohu v. Hatch*,
  940 F. Supp. 2d 1161 (N.D. Cal. 2013) ............................................................... 9

*Holliday v. Extex*,
  No. CIV. 05-00194-SPK, 2005 WL 2158488 (D. Haw. July 6, 2005) ........................... 18

*Hopkins v. Plant Insulation Co.*,
  349 B.R. 805 (N.D. Cal. 2006) ....................................................................... 22

*In re Deepwater Horizon*,
  745 F.3d 157 (5th Cir. 2014) ..................................................................... 14, 16

*In re McCarthy*,
  230 B.R. 414 (9th Cir. BAP 1999) .................................................................... 22

*In re MTBE Prods. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007) ......................................................................... 12

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir. 2010) ....................................................................... 21

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

vi

*In re Ray,*
   624 F.3d 1124 (9th Cir. 2010) ........................................................................................ 21

*In re Schwarz,*
   09-CV- 5831-EJD, 2012 WL 899331 (N.D. Cal. Mar. 15, 2012) ........................................ 22

*In re Universal Life Church,*
   128 F.3d 1294 (9th Cir. 1997) ........................................................................................ 21

*Kamilche Co. v. United States,*
   53 F.3d 1059 (9th Cir. 1995) ............................................................................................ 8

*Leite v. Crane Co.,*
   749 F.3d 1117 (9th Cir. 2014) ........................................................................................ 11

*LLOG Expl. Co. v. Certain Underwriters at Lloyd's of London,*
   No. CIVA 06-11248, 2007 WL 854307 (E.D. La. Mar. 16, 2007) ................................. 16, 17

*Lockyer v. Mirant Corp.,*
   398 F.3d 1098 (9th Cir. 2005) ........................................................................................ 20

*Massachusetts v. Exxon Mobil Corp.,*
   462 F. Supp. 3d 31 (D. Mass. 2020) ................................................................................. 1

*Matheson v. Progressive Specialty Ins. Co.,*
   319 F.3d 1089 (9th Cir. 2003) .......................................................................................... 6

*Mayor & City Council of Baltimore v. BP P.L.C.,*
   388 F. Supp. 3d 538 (D. Md. 2019) ......................................................................... *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.,*
   952 F.3d 452 (4th Cir. 2020) .................................................................................. *passim*

*Nevada v. Bank of Am. Corp.,*
   672 F.3d 661 (9th Cir. 2012) ............................................................................................ 5

*New Mexico ex rel. Balderas v. Monsanto Co.,*
   454 F. Supp. 3d 1132 (D.N.M. 2020) .............................................................................. 20

*Parish of Plaquemines v. Total Petrochem. & Refining USA, Inc.,*
   64 F. Supp. 3d 872 (E.D. La. 2014) ................................................................................ 16

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979).................................................................................................... 7, 8

*People v. ConAgra Grocery Prods. Co.,*
   17 Cal. App. 5th 51 (2017) ......................................................................................... 4, 15

*Plains Gas Sols., LLC v. Tenn. Gas Pipeline Co.,*
   46 F. Supp. 3d 701 (S.D. Tex. 2014) ......................................................................... 14, 16

*Recar v. CNG Producing Co.,*
   853 F.2d 367 (5th Cir. 1988) ......................................................................................... 15

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

vii

*Rhode Island v. Chevron Corp.*,
     393 F. Supp. 3d 142 (D.R.I. 2019)..................................................................... *passim*

*Rhode Island v. Shell Oil Prods. Co.*,
     979 F.3d 50 (1st Cir. 2020)............................................................................... *passim*

*Sec. & Exch. Comm'n v. Alexander*,
     115 F. Supp. 3d 1071 (N.D. Cal. 2015) ..................................................................... 7

*Sec. & Exch. Comm'n v. Stein*,
     906 F.3d 823 (9th Cir. 2018) ..................................................................................... 9

*Sparling v. Doyle*,
     No. EP-13-CV-00323-DCG, 2014 WL 2448926 (W.D. Tex. May 30, 2014)........................ 18

*Syverson v. Int'l Bus. Machines Corp.*,
     472 F.3d 1072 (9th Cir. 2007) ............................................................................. 7, 10

*Totah v. Bies*,
     No. 10-CV-05956-CW, 2011 WL 1324471 (N.D. Cal. Apr. 6, 2011) ................................... 18

*United States v. Stauffer Chem. Co.*,
     464 U.S. 165 (1984)................................................................................................. 7

*Vaden v. Discover Bank*,
     556 U.S. 49 (2009).................................................................................................. 18

*Washington v. Monsanto Co.*,
     274 F. Supp. 3d 1125 (W.D. Wash. 2017)............................................................. 12, 19

*Watson v. Philip Morris Cos.*,
     551 U.S. 142 (2007)................................................................................................. 11

*Willis v. Craig*,
     555 F.2d 724 (9th Cir. 1977) .................................................................................... 18

**Statutes**

28 U.S.C. § 1331.............................................................................................................. 5

28 U.S.C. § 1442(a)(1)................................................................................................. 2, 6, 7

28 U.S.C. § 1446............................................................................................................... 6

28 U.S.C. § 1452....................................................................................................... 2, 20, 22

28 U.S.C. § 1653............................................................................................................... 6

28 U.S.C. § 1291............................................................................................................... 9

43 U.S.C. § 1349.................................................................................................. 2, 13, 14, 15

Cal. Civ. Code §§ 3479–80................................................................................................. 3

Cal. Code Civ. Proc. § 731 ................................................................................................ 3

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

viii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3          The People of the State of California, acting by and through San Francisco City Attorney

4   Dennis J. Herrera and Oakland City Attorney Barbara J. Parker ("the People"), brought these two

5   lawsuits against BP, Chevron, ConocoPhillips, ExxonMobil, and Royal Dutch Shell (collectively,

6   "Defendants") in California state court. In *City of Oakland v. BP P.L.C.*, 969 F.3d 895 (9th Cir.

7   2020), a unanimous Ninth Circuit panel reversed this Court's February 27, 2018 Order denying

8   the People's original motion to remand to state court, but limited its analysis to the four grounds

9   for removal addressed by this Court in that Order. After concluding that none of those grounds

10  supported removal, the panel remanded for this Court to determine whether any of the additional

11  jurisdictional grounds asserted by Defendants were meritorious. *Id.* at 911. For the reasons set

12  forth below, none of Defendants' additional grounds supports removal—as *every* court to consider

13  those grounds for removal has concluded in similar cases involving these same Defendants (plus

14  others).[1] And it is far too late for Defendants to raise any new grounds for removal. Consequently,

15  by this renewed motion to remand, the People again seek an order remanding these two related

16  cases to the state courts in which they were originally filed.

17          Defendants previously asserted eight grounds for removal in this Court. The Ninth Circuit

18  rejected the three "arising under" grounds (based on federal common law, the presence of

19  "disputed and substantial federal issues," and complete preemption) on their merits and rejected

20

21  ─────────────────

[1] *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 937 (N.D. Cal. 2018) ("*San Mateo I*")
22  (granting remand), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020), *reh'g en
   banc denied* (Aug. 4, 2020) ("*San Mateo II*"), *petition for cert. filed*, No. 20-884 (Jan. 4, 2021);
23  *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ("*Baltimore
   I*") (granting remand), *as amended* (June 20, 2019), *aff'd in part, appeal dismissed in part*,
24  952 F.3d 452 (4th Cir. 2020) ("*Baltimore II*"), *cert. granted*, 141 S. Ct. 222 (2020); *Bd. of Cty.
   Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019)
25  ("*Boulder I*") (granting remand), *aff'd in part, appeal dismissed in part*, 965 F.3d 792 (10th Cir.
   2020) ("*Boulder II*"), *petition for cert. filed*, No. 20-783 (Dec. 8, 2020); *Rhode Island v. Chevron
26  Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ("*Rhode Island I*") (granting remand), *aff'd in part,
   appeal dismissed in part*, 979 F.3d 50 (1st Cir. 2020) ("*Rhode Island II*"), *petition for cert. filed*,
27  No. 20-900 (Jan. 5, 2021); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass.
   2020) (granting remand).

28

**THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF**          1
**POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;**
**CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA**

1    one additional ground (admiralty jurisdiction) because Defendants waived it by not including it in

2    their Notices of Removal ("NORs"). *See id.* at 906–08 & n.2, 911 n.12. In the companion case

3    *San Mateo II*, decided the same day, that same Ninth Circuit panel also rejected on the merits a

4    fifth purported ground, jurisdiction under the federal officer removal statute, 28 U.S.C.

5    § 1442(a)(1), raised by the defendants in that case and here. 960 F.3d at 601–03. Defendants are

6    collaterally estopped from renewing their federal officer jurisdiction arguments, because as party

7    defendants they had a full and fair opportunity to present those unsuccessful arguments to the

8    Ninth Circuit in *San Mateo II*, as well as to the First Circuit in *Rhode Island II* and the Fourth

9    Circuit in *Baltimore II*. *See infra* Part IV.A.1.

10          Only three purported grounds for removal remain for this Court, based on Defendants'

11   jurisdictional allegations under: (1) the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)

12   ("OCSLA"), (2) the federal enclave doctrine, and (3) the bankruptcy removal statute, 28 U.S.C.

13   § 1452(a). Each of those grounds lacks merit, as five district courts have unanimously concluded.

14   *See supra* 1 at n.1.

15          There is no jurisdiction under OCSLA, because the People's sole claim for relief in these

16   cases, under California's representative public nuisance law, does not "arise out of" and is not

17   "connected with" Defendants' "operations" on the Outer Continental Shelf ("OCS") within the

18   meaning of 43 U.S.C. § 1349(b)(1). *See infra* Part IV.B.1. There is no enclave jurisdiction, because

19   the People's representative public nuisance claim did not "arise on" federal enclave land, and

20   because the People have expressly disclaimed recovery for any injuries sustained by or on federal

21   property. *See infra* Part IV.B.2. And there is no bankruptcy jurisdiction, because the bankruptcy

22   removal statute does not apply to cases brought by government entities in the public interest, and

23   because there is no "close nexus" between these cases and the long-resolved 30-year-old

24   bankruptcy involving on Defendant's subsidiary that was the sole basis for bankruptcy removal

25   cited in Defendants' NORs. *See infra* Part IV.B.3.

26

27

28

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

2

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

2      The People brought these lawsuits against the five fossil-fuel company Defendants in

3   California state court under a 150-year-old statute that authorizes public entities, in the exercise of

4   their core police power, to bring a "representative" action for equitable abatement against any

5   entity that "knowingly created or assisted in creating" a public nuisance. Cal. Code. Civ. Proc.

6   § 731; *see* Complaint in Case No. 17-cv-6011, Dkt. 1-2 (Oakland); Complaint in Case No. 17-cv-

7   6012, Dkt. 1-2 (San Francisco). Public nuisance, under California law, is "[a]nything which is

8   injurious to health . . . or an obstruction to free use of property, so as to interfere with the

9   comfortable enjoyment of life or property," if it "affects at the same time an entire community or

10  neighborhood, or any considerable number of persons." Cal. Civ. Code §§ 3479–80.[2]

11     The People's complaints allege that Defendants engaged in large-scale advertising and

12  communications campaigns to promote the use of their products at massive levels that Defendants

13  falsely claimed were safe and environmentally responsible, while deliberately concealing since at

14  least the 1970s (a period that correlates to the greatest use of fossil fuels in history) those

15  Defendants' knowledge of harms and risks of global warming to public infrastructure. *See* Oak.

16  1st. Am. Compl., Case No. 17-cv-6011, Dkt. 199, ¶¶ 2–7, 95–123; S.F. 1st Am. Compl., Case No.

17  17-cv-6012, Dkt. 168, ¶¶ 2–7, 95–123. The complaints further allege that Defendants have "known

18  for many years that global warming threatened severe and even catastrophic harms to coastal cities

19  like [Oakland and San Francisco]." Oak. & S.F. 1st Am. Compls. ¶ 147. But instead of sharing

20  that information with prospective consumers or anyone else, Defendants "discredit[ed] the

21  mainstream scientific consensus" and withheld timely and effective warnings that would have

22

---

23  [2] The People's representative public nuisance claim is the only claim at issue. The Ninth Circuit's
    decision in these cases held that although the People had amended their complaints after this Court

24  denied their motion to remand to add a claim under federal common law (solely to "conform to
    the Court's ruling" while "reserv[ing] all rights," *see* Oak. & S.F. 1st Am. Compls. ¶¶ 12, 138,

25  139), that protective federal common law claim cannot be considered in determining whether
    federal jurisdiction exists. *Oakland*, 969 F.3d at 908–11. To eliminate any potential for confusion,

26  the People have, concurrent with this motion, moved to amend their complaints again, this time to
    *withdraw* their conforming federal common law claims for relief and to *withdraw* the two

27  municipal entity co-plaintiffs that pursued only those federal claims. *See* Oak. & S.F. 1st Am.
    Compls. ¶¶ 137–42.

28

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-06011-WHA AND 3:17-CV-06012-WHA

3

permitted effective mitigation, while profiting from the increased sales and consumption of their products. Oak. & S.F. 1st Am. Compls. ¶¶ 6–11. Just as in the seminal lead paint case, in which the California appellate courts upheld a theory of representative-public-nuisance liability based on "wrongful promotion" of an otherwise lawful product regardless of who manufactured it or when it was manufactured, *see People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 79 (2017), *reh'g denied* (Dec. 6, 2017), *rev. denied* (Feb. 14, 2018), *cert. denied*, 139 S. Ct. 377 (2018); *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 310 (2006), the People's allegations focus on Defendants' 50-year campaign of deception. Defendants' wrongful promotion resulted and continues to result in a substantial interference with public rights and thus caused and continues to cause a public nuisance, whose localized impacts should be subject to an equitable abatement order, *see* Oak & S.F. 1st Am. Compls. ¶¶ 103–23 (campaign), 124–36 (impacts), Relief Requested ¶ 2.

On October 20, 2017, Defendants filed NORs in both cases, removing them from state court to this district, where they were related before this Court. *See* Case No. 17-6011, Dkt. 1; Case No. 17-6012, Dkt. 1. The six "*San Mateo*" fossil fuel company cases, filed by other California public entities in other state courts, were removed and related for hearing before Judge Chhabria, who remanded them to the state courts in which they had been filed. *See San Mateo I*, 294 F. Supp. 3d at 934.

The People filed their original motion to remand on November 20, 2017. Case No. 17-6011, Dkt. 81. On February 27, 2018, the Court denied the motion, concluding that the People's representative public nuisance claim was necessarily governed by federal law. *California v. BP P.L.C.*, No. 17-6011, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018). The Court did not reach Defendants' other grounds for removal. The People subsequently amended their complaints solely "to conform to the Court's ruling" by adding a claim for public nuisance under federal common law, while "reserv[ing] all rights with respect to whether jurisdiction is proper in federal court." Oak. & S.F. 1st Am. Compls. ¶ 12.

1    On June 25, 2018, this Court granted Defendants' motions to dismiss for failure to state a

2    claim, concluding that no rights or remedies were available under federal common law. *City of*

3    *Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018). Subsequently, the Court granted

4    motions to dismiss for lack of personal jurisdiction brought by four of the five Defendants. *City of*

5    *Oakland v. BP P.L.C.*, No. 17-cv-6011, 2018 WL 3609055 (N.D. Cal. July 27, 2018).

6    The People appealed all three orders, but the Ninth Circuit limited its review to the

7    threshold question of federal subject matter jurisdiction, concluding that these cases did not "arise

8    under" federal law for purposes of 28 U.S.C. § 1331 and that Defendants had waived admiralty

9    jurisdiction as a basis for removal because they failed to include it in their NORs. *See Oakland*,

10   969 F.3d at 901 & 911 n.12. The Ninth Circuit further held that the People had not waived their

11   challenge to subject matter jurisdiction by amending their complaints to add the protective claims

12   for relief under federal common law. *Id.* at 909; *see also supra* at 3 n.2. It then remanded to allow

13   this Court to consider Defendants' other grounds for removal as asserted in their NORs and to

14   remand to state court if none of those grounds established subject matter jurisdiction. *Oakland*,

15   969 F.3d at 911. The panel instructed that "[i]f, on remand, the district court determines that the

16   cases must proceed in state court, the Cities are free to move the district court to vacate its personal-

17   jurisdiction ruling." *Id.* at 911 n.13.

18   On August 12, 2020, the panel amended its opinion to clarify that it had rejected

19   Defendants' argument that federal-question jurisdiction could rest on the theory that the navigable

20   waters of the United States were an instrumentality of the alleged harm. *Id.* at 911 n.12. The panel

21   also denied Defendants' petition for rehearing, and the Ninth Circuit, without dissent, denied

22   Defendants' petition for rehearing en banc. *Id.* On January 8, 2021, Defendants filed a petition for

23   a writ of certiorari in the U.S. Supreme Court.

24   **III.   LEGAL STANDARDS**

25   Federal courts are courts of limited jurisdiction, and "statutes extending federal jurisdiction

26   . . . are narrowly construed so as not to reach beyond the limits intended by Congress." *Oakland*,

27   969 F.3d at 903. Removal statutes in particular are "strictly construed against federal court

28

1    jurisdiction." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012). "Federal

2    jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."

3    *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Matheson v. Progressive Specialty Ins. Co.*,

4    319 F.3d 1089, 1090 (9th Cir. 2003) (same).

5    **IV.    ARGUMENT**

6          **A.    The Ninth Circuit's decision in *San Mateo II* forecloses federal officer removal,**
7                  **as do similar decisions from other circuits.**

8          Defendants have indicated an intention to renew their federal-officer jurisdiction argument,

9    notwithstanding the Ninth Circuit's express rejection of it in San *Mateo II*, 960 F.3d at 600–03.[3]

10   In that case, the same panel that rejected four of the grounds for removal asserted in the Oakland

11   and San Francisco cases also rejected a fifth ground asserted here and in *San Mateo*: federal-officer

12   jurisdiction under 28 U.S.C. § 1442(a)(1). *See id.*; NORs ¶¶ 57–61 (alleging that Defendants acted

13   under the subjection, guidance, and control of federal superiors when performing operations on

14   the OCS and when producing oil from the Elk Hills Petroleum Reserve).

15         Each of the Defendants here was also a defendant in *San Mateo*, where the same federal-

16   officer jurisdiction theory presented in their NORs here was presented, addressed, and squarely

17   rejected by the Ninth Circuit, just has it has been rejected by every other district and circuit court

18   to consider it. *See Rhode Island II*, 979 F.3d at 60 ("There is simply no nexus between anything

19   for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest

20   of a federal officer."); *Baltimore II*, 952 F.3d at 463, 467–68 (doubting that Elk Hills contract

21

22   ─────────────────────────
     [3] Defendants have also stated their intent to "present an augmented evidentiary record" in response
23   to the People's renewed remand motion, presumably to support this federal officer theory. *See*
     Joint Case Management Statement, No. 17-cv-6011, Dkt. 314, at 7:14 (Nov. 10, 2020). They
24   should not be allowed to do so. Once the deadline for removal has passed, as it has here (*see
     Oakland*, 969 F.3d at 911 n.12; 28 U.S.C. § 1446), a notice of removal may only be amended with
25   leave of court "to clarify 'defective' allegations of jurisdiction previously made," and such
     amendments may not "add allegations of substance." *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d
26   316, 317 (9th Cir. 1969); 28 U.S.C. § 1653; *see also Hemphill v. Transfresh Corp.*, No. C-98-
     0899-VRW, 1998 WL 320840, at *4–5 (N.D. Cal. June 11, 1998). Because Defendants have never
27   disclosed what their newly "augmented" record might include, the People reserve the right to
     address that evidence and/or to further challenge Defendants' right to include it in the record, in
28   the People's reply briefing.

─────────────────────────
**THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF**          6
**POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;**
**CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA**

1    satisfied the "acting under" element of federal officer removal, and holding it did not satisfy the

2    "for or relating to" element; and holding that OCS leases satisfied neither); *Boulder II*, 965 F.3d

3    at 826–27 (defendants were not "acting under" federal officer while adhering to OCS leases).

### 1. Defendants are estopped from asserting federal officer jurisdiction.

5    Each of the five Defendants here joined in NORs in the related *San Mateo* actions, which

6    include factual allegations and legal contentions in support of federal-officer removal jurisdiction

7    that are identical to those presented by Defendants here. In granting the plaintiffs' motion to

8    remand, Judge Chhabria rejected federal-officer removal as a basis for jurisdiction. *San Mateo I*,

9    294 F. Supp. 3d at 934, 937. On appeal, the Ninth Circuit affirmed, and explained why the facts

10   Defendants' alleged were not sufficient to establish jurisdiction under 28 U.S.C. § 1442(a)(1).

11   *San Mateo II*, 960 F.3d at 598–603. Because every allegation in support of federal-officer

12   jurisdiction here was already fully and fairly resolved and affirmed in the *San Mateo* case, as well

13   as in *Rhode Island* and *Baltimore*, Defendants should not be permitted to relitigate them.[4]

14   Offensive collateral estoppel is the doctrine under which "a plaintiff [may seek] to estop a

15   defendant from relitigating the issues which the defendant previously litigated and lost against

16   another plaintiff." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). This form of issue

17   preclusion applies when the plaintiff asserting estoppel demonstrates: "(1) there was a full and fair

18   opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated in

19   the prior action, (3) the issue was decided in a final judgment, and (4) the party against whom issue

20   preclusion is asserted was a party or in privity with a party to the prior action." *Syverson v. Int'l*

21   *Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citations omitted); *see also Sec. &*

22   *Exch. Comm'n v. Alexander*, 115 F. Supp. 3d 1071, 1079 (N.D. Cal. 2015) (securities fraud claims

23

24   [4] The judgments in *Rhode Island* and *Baltimore* provide independent and additional bases for
     estoppel. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 168–69 (1984) (Tenth Circuit
25   decision precluded relitigation of identical issue in Sixth Circuit). In those cases, the same
     defendants litigated and lost the same federal officer arguments that they press here. *See Rhode*
26   *Island II*, 979 F.3d at 59–60 (rejecting OCS leases and the Elk Hills reserve as bases for federal
     officer jurisdiction); *Baltimore II*, 952 F.3d at 464–71 (same). *Boulder* did not involve all of the
27   same defendants as here, and thus the People do not rely on it as a basis for estoppel with respect
     to Chevron, Shell, BP, and ConocoPhillips, which are *not* defendants in that case.
28

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

7

precluded under offensive estoppel doctrine). Factors to be considered in determining whether two issues are "identical" for purposes of estoppel include (1) "substantial overlap" of "evidence or argument," (2) "application of the same rule of law," (3) overlap in "pretrial preparation and discovery," and (4) related claims. *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995). If these prerequisites are satisfied and applying the doctrine would not be inequitable or unfair, the court should exercise its discretion to preclude the estopped party from litigating the already-decided issue. *See Parklane*, 439 U.S. at 332; *see also Bates v. Union Oil Co. of Cal.*, 944 F.2d 647, 651 (9th Cir. 1991).

The theories of federal officer removal that Defendants assert here are identical to theories they litigated and lost in *San Mateo I* and *II*, as well as in *Rhode Island I* and *II* and *Baltimore I* and *II*. *See* Declaration of Victor M. Sher in Support of the People's Renewed Motion to Remand ("Sher Decl.") ¶ 3, Ex. 2 (*San Mateo* NOR); ¶ 6, Ex. 5 (*Rhode Island* NOR); ¶ 9, Ex. 8 (*Baltimore* NOR). In each of these cases, Defendants have contended that Defendants Chevron, BP, and Exxon Mobil acted under the direction of federal officers when extracting fossil fuels on the OCS pursuant to mineral leases with the federal government (*compare id.*, *with* NORs ¶¶ 52, 58–59) and that Standard Oil of California, a predecessor of Defendant Chevron, acted under the direction of federal officers when it extracted fossil fuels at the Elk Hills Reserve pursuant to a 1944 unit plan contract with the U.S. Navy (*compare* Sher Decl. ¶¶ 3, 6, 9, *with* NORs ¶ 60). *Compare* NORs ¶¶ 55–61, *with San Mateo II*, 960 F.3d at 600–03; *Rhode Island II*, 979 F.3d at 59–60; *Baltimore II*, 952 F.3d at 464–71. In each case, Defendants have offered identical evidentiary support for each alleged basis for federal officer removal. *See* Sher Decl. ¶¶ 4, 7, 10. Although the claims for relief in the *San Mateo* cases are broader than the People's claims in these cases (because in addition to a representative public nuisance claim, the *San Mateo* plaintiffs also pleaded different state tort claims for damages and injunctive relief), they include the same representative public nuisance claim that the People assert here, stemming from the same underlying allegation that Defendants wrongfully engaged in a decades-long campaign to conceal and mislead consumers and the public about the climate dangers of their fossil-fuel products. *Compare* Oak. & S.F. 1st

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND; CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

8

1   Am. Compls. ¶¶ 103–23, *with* Sher Decl. ¶ 2, Ex. 1 (San Mateo Compl.) ¶¶ 110–47, 179–91; *see*

2   *also* Sher Decl. ¶ 5, Ex. 4 (Rhode Island Compl.) ¶¶ 106–96, 225–37; Sher Decl. ¶ 8, Ex. 7

3   (Baltimore Compl.) ¶¶ 103–90, 218–28.

4           The federal officer removal issues resolved in the *San Mateo* litigation and in these cases

5   are identical in all relevant respects. The only allegations supporting federal officer removal that

6   Defendants may rely on to oppose remand here are those they alleged on October 20, 2017, in their

7   NORs, which are a subset of the grounds they unsuccessfully asserted in *San Mateo*, *Rhode Island*,

8   and *Baltimore*. *See Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 830 (9th Cir. 2018) (applying

9   estoppel to securities fraud defendants whose litigation in the first lawsuit could "reasonably be

10  expected to have embraced" any additional evidence or arguments raised in the second case,

11  especially in light of "the nearly complete overlap of facts" between the two suits). And

12  consideration of federal officer jurisdiction here would necessarily require "application of the same

13  rule of law as that involved in" *San Mateo*, namely, the Ninth Circuit's standard for evaluating a

14  claim of federal officer removal. *Id.* (focusing on whether a difference in "applicable legal

15  standards . . . would affect the outcome of the [second] case").

16          The remaining requirements of estoppel are also satisfied. Defendants unquestionably had

17  a full and fair opportunity to litigate the federal officer issue in *San Mateo I* and *II* and took full

18  advantage of that opportunity, vigorously pressing their theory in the district court and Ninth

19  Circuit, and likewise in the First Circuit for *Rhode Island* and the Fourth Circuit for *Baltimore*.

20  There is also no doubt that the remand orders in these cases are "final judgments" for estoppel

21  purposes, notwithstanding Defendants' pending petitions for a writ of certiorari and case pending

22  before the Supreme Court in *Baltimore* (which, in any event, do *not* raise the merits of the circuit

23  courts' federal officer analysis as a Question Presented, only whether the circuit courts should have

24  reached *other* jurisdictional grounds as well[5]). *Harmston v. City & Cty. of S.F.*, 627 F.3d 1273,

25  1278 (9th Cir. 2010) (holding that remand orders are "final for purposes of [28 U.S.C.] § 1291");

26  ─────────────

27  [5] *See* Petition for Writ of Certiorari, *Chevron Corp. et al. v. San Mateo Cty. et al.*, U.S. Sup. Ct.
    Case No. 20-884; Petition for Writ of Certiorari, *Chevron Corp. et al. v. Rhode Island*, U.S. Sup.
    Ct. Case No. 20-900; *BP P.L.C. v. Mayor & City Council of Baltimore*, U.S. Sup. Ct. Case No.

28  19-1189 (argued Jan. 19, 2021).

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF          9
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

1   *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) ("[A] final judgment retains its

2   collateral estoppel effect, if any, while pending appeal."); *Hohu v. Hatch*, 940 F. Supp. 2d 1161,

3   1178 (N.D. Cal. 2013) (giving preclusive effect to prior remand order).

4        Finally, none of the four recognized "indices of unfairness" preclude applying estoppel

5   here. *See Syverson*, 472 F.3d at 1079. The People in these cases did not "adopt a 'wait and see'

6   attitude in the hope that" *San Mateo* "would result in a favorable judgment." *See id.* The People

7   filed these actions two months after the *San Mateo* litigation commenced and promptly moved to

8   remand once Defendants improperly removed. Because the various sets of cases involve the same

9   relevant claims, issues, and interests, Defendants also had the same "incentive[s]" to litigate this

10  removal jurisdiction issue here and in the other cases "with full vigor"—and they certainly did so.

11  *See id.* The remand orders in *San Mateo*, *Rhode Island*, and *Baltimore* are, moreover, not

12  "inconsistent" with any prior decision. *See id.* To the contrary, they are entirely consistent with

13  each other and the unbroken line of district court and appellate authority rejecting nearly identical

14  assertions of federal officer jurisdiction in similar cases. *See supra* 1 at n.1. And Defendants cannot

15  point to any "procedural opportunities" in here that were "unavailable" to them in those cases and

16  "could readily cause a different result" here. *See Syverson*, 472 F.3d at 1079 (quotations omitted);

17  *see also Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001) (finding that all

18  the "policy considerations . . . cut in favor of applying offensive non-mutual collateral estoppel").

19       For these reasons, if Defendants seek to renew their federal officer theory of removal, this

20  Court should hold that they are estopped from doing so. The Ninth Circuit squarely rejected that

21  argument on the merits in *San Mateo II*, as did the First Circuit in *Rhode Island II* and the Fourth

22  Circuit in *Baltimore II*.

23            **2.**     **There is no basis for federal officer removal.**

24       Even if this Court considers the merits of federal officer removal—which it should not,

25  because Defendants are estopped from raising it—their argument fails. Indeed, the Ninth Circuit's

26  decision in *San Mateo II* is binding precedent on this very issue, and *Rhode Island II*, *Baltimore*

27  *II*, and *Boulder II* likewise rejected federal officer jurisdiction on similar facts. *See San Mateo II*,

28

1    960 F.3d at 598–602; *Rhode Island II*, 979 F.3d at 60; *Baltimore II*, 952 F.3d at 463, 467–68;

2    *Boulder II*, 965 F.3d at 826–27.

3         A defendant seeking to remove pursuant to the federal officer removal statute "must

4    establish: (a) it is a person within the meaning of the statute; (b) there is a causal nexus between

5    its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it

6    can assert a colorable federal defense." *San Mateo II*, 960 F.3d at 598. To satisfy the "causal nexus"

7    requirement, "the private person must show: (1) that the person was 'acting under' a federal officer

8    in performing some 'act under color of federal office,' and (2) that such action is causally

9    connected with the plaintiffs' claims." *Id.* For the reasons stated by the Ninth Circuit in *San Mateo*

10   *II*, Defendants fail to meet these requirements. *See also Cabalce v. Thomas E. Blanchard &*

11   *Assocs., Inc.*, 797 F.3d 720, 732 n.6 (defendants must support federal-officer allegations with

12   "competent proof" (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)). At most, the

13   facts alleged in Defendants' NORs show that some Defendants entered "arm's-length business

14   arrangement[s] with the federal government" or complied with regulatory requirements imposed

15   on them pursuant to federal law—neither of which is sufficient to establish federal officer

16   jurisdiction. *See San Mateo II*, 960 F.3d at 600–03.

17        ***"Acting under" element:*** For purposes of the federal officer removal statute, a "private

18   person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of

19   the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (emphases in

20   original). Removal is not appropriate where a private company merely complies with federal law

21   or acquiesces in a government order, even where the "private firm's activities are highly supervised

22   and monitored." *Id.* at 152–53. Here, the OCS leasing forms on which Defendants rely merely

23   provide that OCS lessees are subject to various regulatory obligations related to their use of—and

24   private profit from—offshore federal lands. *See* NORs ¶ 59 (noting requirement to "comply with

25   all applicable regulations, orders, written instructions, and the terms and conditions set forth in this

26   lease"). "The leases do not require that lessees act on behalf of the federal government, under its

27   close direction, or to fulfill basic governmental duties," lessees are not "engaged in an activity so

28

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

11

closely related to the government's function that the lessee faces 'a significant risk of state-court "prejudice,"'" and "the lease requirements largely track legal requirements" imposed by OCSLA and its implementing regulations. *San Mateo II*, 960 F.3d at 602–03. For these principal reasons, the Ninth Circuit held that fossil-fuel companies do not "act under" federal officers when extracting oil and gas from the OCS pursuant to those federal mineral leases. *Id.* at 603; *accord Boulder II*, 965 F.3d at 826; *Baltimore II*, 952 F.3d at 465–66.

The Ninth Circuit also considered Standard Oil's 1944 Unit Plan Contract ("UPC") with the Navy concerning the Elk Hills Reserve, *see* NORs ¶ 60, and concluded that Standard Oil's activities under that "arm's-length business arrangement" did not give rise to an "acting under" relationship because Standard was not acting on behalf of the government to perform a basic government function. 960 F.3d at 602. "Rather, Standard and the government reached an agreement that allowed them to coordinate their use of the oil reserve in a way that would benefit both parties: the government maintained oil reserves for emergencies, and Standard ensured its ability to produce oil for sale." *Id.*; *accord Baltimore II*, 952 F.3d at 471. Neither of Defendants' proffered relationships with the federal government establish that it was "acting under" a federal superior in a manner sufficient to confer federal jurisdiction.

***Causal connection element:*** Independently, Defendants have failed to demonstrate the necessary causal connection between the acts they purportedly performed under the direction of federal officers and the conduct challenged in the People's Complaints, i.e., deliberately misleading the public regarding the risks of fossil fuel combustion and engaging in a five-decades-long campaign of disinformation designed to encourage the increased sale and combustion of fossil fuel products. "[The People's] claim is simple: the oil companies knew what fossil fuels were doing to the climate and continued to sell them anyway, all while misleading consumers about the true impact of the products." *Rhode Island II*, 979 F.3d at 59; *see also id.* at 60 ("There is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer."); *accord Baltimore II*, 952 F.3d at 466–67; *San Mateo I*, 294 F. Supp. 3d at 939; *Boulder I*, 405 F. Supp. 3d at 976–77; *see also Washington v.*

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND; CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

12

*Monsanto Co.*, 274 F. Supp. 3d 1125, 1131 (W.D. Wash. 2017), *aff'd*, 738 F. App'x 554 (9th Cir. 2018); *In re MTBE Prods. Liab. Litig.*, 488 F.3d 112, 131 (2d Cir. 2007) (federal officer removal improper in case involving regulated fuel additive where federal regulations "say nothing" about deceptive marketing and other tortious conduct at issue).

As *San Mateo II* and the similar cases from other circuits make clear, Defendants have failed to demonstrate federal officer jurisdiction here.

**B.      Defendants' remaining grounds for removal likewise fail.**

**1.      The People's claims do not fall within the jurisdictional grant of OCSLA.**

OCSLA grants federal subject matter jurisdiction over the narrow set of "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1). Defendants cannot satisfy those statutory requirements because the primary tortious activity alleged in the People's representative public nuisance claims— Defendants' misrepresentations of the known dangers of fossil fuels, while simultaneously and wrongfully promoting their unrestrained use, *see, e.g.*, Oak. & S.F. 1st Am. Compls. ¶¶ 5, 103– 23, 145—does not "arise out of" and is not "connected with" any Defendant's operations on the OCS. The elements of the People's representative public nuisance claims do not require proof of *any* conduct by Defendants "on" the OCS, and the People do not contend that Defendants' operations on the OCS, whatever they may have been, are themselves actionable. As a result, there is no OCSLA jurisdiction.

Every court that has considered OCLSA jurisdiction on materially identical facts has rejected it, including in cases where the plaintiff alleged a wider range of state tort causes of action than the People have alleged here. *See San Mateo I*, 294 F. Supp. 3d at 938–39 ("Removal under [OCSLA] was not warranted because even if some of the activities that caused the alleged injuries stemmed from operations on the [OCS], the defendants have not shown that the plaintiffs' causes of action would not have accrued *but for* the defendants' activities on the shelf."); *Boulder I*, 405

F. Supp. 3d at 978 (collecting cases: "[F]or jurisdiction to lie, a case must arise directly out of OCS operations. . . . The fact that some of ExxonMobil's oil was apparently sourced from the OCS does not create the required direct connection."); *Rhode Island I*, 393 F. Supp. 3d at 151–52 (no OCSLA jurisdiction even where "Defendants' operations on the [OCS] may have contributed to the State's injuries," because "Defendants have not shown that these injuries would not have occurred but for those operations"); *Baltimore I*, 388 F. Supp. 3d at 566 ("Even under a 'broad' reading of the OCSLA jurisdictional grant endorsed by the Fifth Circuit, defendants fail to demonstrate that OCSLA jurisdiction exists."). This Court should do the same.

Defendants cannot show that these cases "arise out of" or are "connected with" any "operation conducted on the [OCS]." *See* 43 U.S.C. § 1349(b)(1); *see also In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *Plains Gas Sols., LLC v. Tenn. Gas Pipeline Co.*, 46 F. Supp. 3d 701, 704–05 (S.D. Tex. 2014). The word "operation" is not defined in OCSLA, but the Fifth Circuit has held that "the term 'operation' contemplate[s] the doing of some physical act on the OCS," as the statute's modifying terms (involving the "exploration, development, or production," 43 U.S.C. § 1349(b)(1)) suggest. *See, e.g.*, *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994). Courts in the Fifth Circuit have thus granted remand where the allegedly tortious conduct was not a physical act conducted on the OCS.

In *Dominion Exploration & Production, Inc. v. Ameron International Corp.*, No. CIV.A. 07-3888, 2007 WL 4233562, at *1 (E.D. La. Nov. 27, 2007), for example, the plaintiff contracted with the defendant to apply protective paint to an offshore oil platform under construction, with the requirement that the paint be lead-free. When the plaintiff discovered that the applied paint contained lead, it sued for negligence and breach of contract. *Id.* After the defendant removed by alleging OSCLA jurisdiction, the district court remanded, holding that because the alleged wrongful conduct was applying lead-containing paint, and because that paint was applied while the platform was still under construction on land, the plaintiffs' claims were not related to an "operation" on the OCS: "Simply because the spar would eventually be placed on the OCS does not give it the required operation to fall under the OCSLA jurisdiction." *Id.* at *3. Nor did it matter

1    that the plaintiff sought "damages resulting from delayed or deferred production" of oil and gas

2    on the OCS while the platform was repainted. *Id.* at \*4. Because the painting could "neither be

3    characterized under the OCSLA definition of 'production,' nor [was] the paint agreement

4    specifically linked to the cessation, suspension or reduction of production of minerals," the

5    defendant's alleged breach did not implicate any OCS "operation." *Id.*

6           Here, the conduct giving rise to liability under California's representative public nuisance

7    law, like the conduct in the Fourth Circuit's *Baltimore* case, "is the concealment and

8    misrepresentation of the products' known dangers—and simultaneous promotion of their

9    unrestrained use—that allegedly drove consumption, and thus greenhouse gas pollution, and thus

10   climate change." *Baltimore II*, 952 F.3d at 467; *see also Rhode Island II*, 979 F.3d at 60; *see, e.g.*,

11   S.F. 1st Am. Compl. ¶ 5 (Defendants "did not simply produce fossil fuels," but instead "engaged

12   in large-scale, sophisticated advertising and communications campaigns to promote pervasive

13   fossil fuel usage and to portray fossil fuels as environmentally responsible and essential to human

14   well-being—even as they knew that their fossil fuels would contribute . . . to accelerated sea level

15   rise."); Oak. 1st Am. Compl. ¶ 5 (similar). Defendants' wrongful promotion of their fossil-fuel

16   products, accomplished by misleading the public about the connection between fossil fuels and

17   climate change and with knowledge of the harms that would result, is the allegedly unlawful

18   activity at issue. *See ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th at 83 (affirming public

19   nuisance liability "premised on defendants' *promotion of [a product for use] with knowledge of*

20   *the hazard* that such use would create"). That activity is plainly not a physical act on the OCS, and

21   thus not an "operation conducted on" the OCS within the meaning of Section 1349(b)(1). *See*

22   *Boulder I*, 405 F. Supp. 3d at 978–79; *Baltimore I*, 388 F. Supp. 3d at 566–67. Defendants'

23   deceptive marketing campaigns lack sufficient "relationship with an operation or the development

24   and production of minerals" to create OCSLA jurisdiction. *See Dominion Expl. & Prod.*, 2007 WL

25   4233562, at \*4.

26          The Fifth Circuit—the only circuit court to substantively address the OCSLA jurisdictional

27   statute—has held that the "arising out of, or in connection with" standard is satisfied only when

28

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

15

1    (1) the plaintiff "would not have been injured 'but for'" the operation, *Recar v. CNG Producing*

2    *Co.*, 853 F.2d 367, 369 (5th Cir. 1988), or (2) the requested relief "threatens to impair the total

3    recovery of the federally-owned minerals" from the OCS. *See EP Operating Ltd. P'ship*, 26 F.3d

4    at 570. "[F]or jurisdiction to lie, a case must arise directly out of OCS operations." *Boulder I*, 405

5    F. Supp. 3d at 978. In the Fifth Circuit, courts routinely refuse jurisdiction over cases where, as

6    here, only "uncertain, speculative, and completely hypothetical future events" might reduce

7    ultimate recovery of OCS resources, and "the relationship between the injuries in th[e] case and

8    the activities that cause them and any operations on the OCS is simply too remote and attenuated."

9    *Parish of Plaquemines v. Total Petrochem. & Refining USA, Inc.*, 64 F. Supp. 3d 872, 898 (E.D.

10   La. 2014).[6] Just as in *Boulder I*, "[t]he fact that some of [Defendants'] oil was apparently sourced

11   from the OCS does not create the required direct connection" between the claims here and an

12   operation on the OCS. 405 F. Supp. 3d at 978.

13              The Fifth Circuit has also emphasized that its OCSLA jurisdictional test "is not limitless"

14   and must be applied in a reasonable, commonsense manner consistent with OCSLA's overall

15   purposes. *Plains Gas Sols.*, 46 F. Supp. 3d at 704–05; *see, e.g.*, *Parish of Plaquemines*, 64 F. Supp.

16   3d at 894–98 (no OCSLA jurisdiction over pollution claims affecting Louisiana parish that

17   involved discharges from "pipelines that ultimately stretch to OCS," because the "mere

18   connection" between the plaintiff's claims and defendants' operations were "'too remote' to

19   establish federal jurisdiction"). Without such commonsense limitations, every case involving a

20   collision with a tanker truck and every products liability case involving a petroleum-based product

21   could be removed to federal court under OCSLA on the theory that the damages would not have

22   occurred, or would not have occurred to the same extent, had the offending product not contained

23

---

24   [6] *See, e.g.*, *LLOG Expl. Co. v. Certain Underwriters at Lloyd's of London*, No. CIVA 06-11248,
     2007 WL 854307, at *5 (E.D. La. Mar. 16, 2007) (no OCSLA jurisdiction over insurance dispute

25   "regarding damages to production facilities that have already occurred" because suit "does not
     affect or alter the progress of production activities on the OCS, nor does it threaten to impair the

26   total recovery of federally owned minerals from the OCS"); *Brooklyn Union Expl. Co. v. Tejas
     Power Corp.*, 930 F. Supp. 289, 292 (S.D. Tex. 1996) ("A controversy exclusively over the price

27   of gas which has already been produced, as in the instant case, simply does not implicate the
     interest expressed by Congress in the efficient exploitation of natural resources on the OCS.").

28

1    some OCS-sourced petroleum. "[A] 'mere connection' between the cause of action and the OCS

2    operation" that is "too remote" will not "establish federal jurisdiction." *Deepwater Horizon*, 745

3    F.3d at 163.

4          Here, the People's public nuisance claims are based on Defendants' intentional and

5    deceptive promotion of their fossil-fuel products despite their knowledge of the hazards associated

6    with those products—no matter where or by what operations some products' constituent elements

7    were originally extracted. *See, e.g.*, Oak. & S.F. 1st Am. Compls. ¶¶ 103–23. Defendants' assertion

8    that OCSLA jurisdiction attaches because some unspecified "quantum" of oil and natural gas may

9    be produced from the OCS, NORs ¶ 53, amounts to an "argument that there is federal jurisdiction

10   if any oil sourced from the OCS is some part of the conduct that creates the injury," i.e., by

11   aggravating the resulting harm, even if the source had no bearing on defendants' actual liability—

12   a construction that would "dramatically expand the statute's scope." *See Boulder I*, 405 F. Supp.

13   3d at 979; *see also LLOG Expl. Co.*, No. CIVA 06-11248, 2007 WL 854307, at *2, *5 (no OCSLA

14   jurisdiction where plaintiffs argued "the events at issue here—the Insurer's breaches of the

15   insurance contract—occurred on dry land, in various offices in the United States and abroad, not

16   on the outer Continental Shelf," and the court held "[t]he insurance coverage dispute does not

17   affect or alter the progress of production activities on the OCS, nor does it threaten to impair the

18   total recovery of federally owned minerals from the OCS"). As every court to consider Defendants'

19   allegations has held, Defendants have not shown that the People's claims arise out of or are

20   connected to operations on the OCS within the meaning of OCSLA. *See San Mateo I*, 294 F. Supp.

21   3d at 938–39; *Boulder I*, 405 F. Supp. 3d at 979; *Rhode Island I*, 393 F. Supp. 3d at 151–52;

22   *Baltimore I*, 388 F. Supp. 3d at 566–67; *see also Hammond v. Phillips 66 Co.*, No. 14-CV-119-

23   KS, 2015 WL 630918, at *4 (S.D. Miss. Feb. 12, 2015) (remanding where defendant failed to

24   show plaintiff's asbestosis would not have occurred "but for" his nine-month exposure on OCS

25   rigs given his 10 years of employment on land-based oil rigs).

26         There is also no basis for concluding that an equitable abatement order in these cases will

27   directly affect any Defendant's operations on the OCS, *see* NORs ¶ 54, any more than any tort or

28

contract claim against these Defendants would have such an effect.[7] *See Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1008 (9th Cir. 2013) ("It is certainly not impossible for an airline both to comply with federal regulations and to pay damages in state tort suits."). Defendants' theory goes too far; it would create federal OCSLA jurisdiction over *any* claim that could result in any award of damages (or any injunction or other equitable relief that would cost money to implement) against any company that operates on the OCS—no matter how remote those operations are from a plaintiff's injury. Neither OCSLA itself nor any case law permits such an absurd result. *See Boulder I*, 405 F. Supp. 3d at 979.

### 2.  There is no enclave jurisdiction because the People's claims do not "arise" within federal enclaves.

Defendants' assertion of federal enclave jurisdiction has also been rejected by every court that has considered it in a similar case. *See, e.g.*, *San Mateo I*, 294 F. Supp. 3d at 939; *Rhode Island I*, 393 F. Supp. 3d at 152; *Boulder I*, 405 F. Supp. 3d at 973–75; *Baltimore I*, 388 F. Supp. 3d at 563–66. "Federal courts have federal question jurisdiction over tort claims that *arise on* 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (emphasis added). As Defendants concede, "[t]he 'key factor' in determining whether . . . federal enclave jurisdiction [exists] 'is the location of the plaintiff's injury or where the specific cause of action arose.'" NORs ¶ 63 (quoting *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014)); *see also Willis v. Craig*, 555 F.2d 724, 726 (9th Cir. 1977) (if an injury did not occur on a federal enclave, "the district court lacks subject matter jurisdiction"). This construction is consistent with the overwhelming weight of the case law on enclave removal, which holds that a cause of action "arises" when and where "the 'substance and consummation' of events giving rise to claims occur." *Coleman v. Trans Bay Cable, LLC*, No. 19-CV-02825-YGR, 2019 WL 3817822, at *4 (N.D. Cal. Aug. 14, 2019) (quoting *Totah v. Bies*, No. 10-CV-05956-

---

[7] Defendants' arguments concerning the effect of equitable relief through an abatement fund, NORs ¶ 54, though couched in relation to OCSLA jurisdiction, raise federal defenses that cannot provide grounds for removal—namely, extraterritorial regulation in violation of the dormant Commerce Clause and conflict preemption. *See Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("[f]ederal jurisdiction cannot be predicated on an actual or anticipated [federal] defense").

1    CW, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011)); *Holliday v. Extex*, No. CIV. 05-00194-

2    SPK, 2005 WL 2158488, at *4 (D. Haw. July 6, 2005), *report and recommendation adopted*, No.

3    CIV 05-00299-SPK, 2005 WL 2179392 (D. Haw. Aug. 24, 2005) (key factor in determining

4    whether enclave jurisdiction exists is "the location of the plaintiff's injury"; collecting cases

5    indicating that the site of injurious exposure is key to establishing enclave jurisdiction).

6           The People's Complaints expressly disclaim relief for any harm to federal property. Oak.

7    1st Am. Compl. ¶ 142 n.82 ("Plaintiffs . . . do not seek abatement with respect to any federal

8    land."); S.F. 1st Am. Compl. ¶ 142 n.154 (same). Because the People's claims only "arise" for

9    enclave purposes when and where the People suffered injuries, and because the People disclaim

10   injuries on federal land, there is no federal enclave jurisdiction. Courts have frequently found that

11   when a plaintiff disclaims recovery for injuries suffered on federal lands, there is no enclave

12   jurisdiction. *See, e.g.*, *Rhode Island I*, 393 F. Supp. 3d at 152 (no enclave jurisdiction "since [the

13   State's] complaint avoids seeking relief for damages to any federal lands"); *Boulder I*, 405 F. Supp.

14   3d at 974 (plaintiff did "not seek damages or abatement relief for injuries to or occurring to federal

15   lands" (citations omitted)); *Baltimore I*, 388 F. Supp. 3d at 565 ("[t]he Complaint . . . expressly

16   define[d] the scope of injury to exclude any federal territory"); *see also Monsanto Co.*, 274 F.

17   Supp. 3d at 1132 ("[B]ecause Washington avowedly does not seek relief for contamination of

18   federal territories, none of its claims arise on federal enclaves."); *Goto v. Whelan*, No. 20-cv-01114

19   (HSG), 2020 WL 4590596, at *4 (N.D. Cal. Aug. 11, 2020) (granting remand based on disclaimer).

20   As the court held in *Boulder I*:

21          It is not the defendant's conduct, but the injury, that matters. . . . Federal enclave
            jurisdiction thus does not exist here because Plaintiffs' claims and injuries are
22          alleged to have arisen exclusively on non-federal land. That . . . Defendants may
            have caused similar injuries to federal property . . . does not provide a basis
23          for removal.

24   405 F. Supp. 3d at 974 (citations omitted). The same result obtains here.

25          Removal based on enclave jurisdiction would also be inappropriate if the Court focused on

26   the location of Defendants' tortious conduct, rather than the location of the People's injuries. Even

27   if *some* tortious conduct relevant to the People's claims occurred on a federal enclave (which it

28

did not), "courts have only found that claims arise on federal enclaves, and thus fall within federal question jurisdiction, when *all or most* of the pertinent events occurred there." *See Baltimore I*, 388 F. Supp. 3d at 565 (emphasis added) (collecting cases); *Coleman*, 2019 WL 3817822, at \*3. Here, the pertinent events—Defendants' campaign of deception and overpromotion, despite knowledge of the hazards associated with their fossil fuel products—overwhelmingly occurred outside of any discrete federal enclaves. *See San Mateo I*, 294 F. Supp. 3d at 939 ("Nor was federal enclave jurisdiction appropriate, since federal land was not the 'locus in which the claim arose.'" (citation omitted)); *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1146 (D.N.M. 2020) (holding "partial occurrence on a federal enclave is insufficient to invoke federal jurisdiction" where waterways identified as enclaves "make up only a small fraction" of contaminated waterbodies at issue); *Ballard v. Ameron Int'l Corp.*, No. 16-CV-06074-JSC, 2016 WL 6216194, at \*3 (N.D. Cal. Oct. 25, 2016) (remanding state-law asbestos-related claims where plaintiff worked for defendant on military base, but asbestos exposure was "just a small portion of the total exposure: one of 17 locations and during six months of the years-long exposure period"). There is no federal enclave jurisdiction here.

### 3. Bankruptcy removal is inapplicable.

Defendants' argument for bankruptcy removal jurisdiction rests upon a bankruptcy proceeding that concluded more than 30 years ago involving a Chevron subsidiary, Texaco Inc. NORs ¶ 69. That jurisdictional theory, like all the others, has been rejected by every court to consider it—and rightly so. *See San Mateo I*, 294 F. Supp. 3d at 939; *Baltimore I*, 388 F. Supp. 3d at 570–71; *Rhode Island I*, 393 F. Supp. 3d at 152; *Boulder I*, 405 F. Supp. 3d at 980–81. Bankruptcy removal is improper here, too, for three independent reasons.[8]

*First*, the bankruptcy removal statute prohibits removal of lawsuits by public entities seeking to protect public safety and welfare. 28 U.S.C. § 1452(a). The People's public nuisance claims come squarely within that police or regulatory power exemption because they primarily

---

[8] Notably, Defendants (including Chevron) abandoned this ground for removal in the currently pending motion for remand in the similar *City and County of Honolulu v. Sunoco L.P. et al.*, Case No. 20-cv-00163-DKW (D. Haw.), although they did assert it in their NOR in that case.

"seek[] to effectuate public policy" rather than to "adjudicate private rights." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (quotations omitted). The fact that "most government actions . . . have some pecuniary component . . . . does not abrogate their police power function." *In re Universal Life Church*, 128 F.3d 1294, 1299 (9th Cir. 1997), *as amended on denial of reh'g* (Dec. 30, 1997); *see also City & Cty. of S.F. v. PG&E Corp.*, 433 F.3d 1115, 1123–26 (9th Cir. 2006). These two related lawsuits are firmly rooted in the People's police-power authority to protect the public health and welfare. Remand must therefore be granted for at least that threshold reason. *See, e.g.*, *San Mateo I*, 294 F. Supp. 3d at 939 (bankruptcy removal inapplicable because "these suits are aimed at protecting the public safety and welfare and brought on behalf of the public"); *Baltimore I*, 388 F. Supp. 3d at 570–71 (same); *Rhode Island I*, 393 F. Supp. 3d at 152 (bankruptcy removal improper because "this is an action designed primarily to protect the public safety and welfare" (cleaned up)).

   *Second*, and independently, even if the public safety and welfare exception did not apply here, bankruptcy removal is also improper because the People's claims are not sufficiently "related to" Texaco's bankruptcy. *See* NORs ¶ 67. "Related to" jurisdiction for a post-confirmation bankruptcy—Texaco's was confirmed in 1988—is "necessarily more limited" than for a pre-confirmation bankruptcy and exists only if the claim has a "close nexus" to the bankruptcy plan or proceeding. *See In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2010); *In re Ray*, 624 F.3d 1124, 1134 (9th Cir. 2010). Only matters involving the "interpretation, implementation, consummation, execution, or administration of the confirmed plan" will typically have the requisite nexus. *In re Pegasus Gold Corp.*, 394 F.3d at 1194. There is no "close nexus" here. The People's state-law public nuisance claim exists "entirely apart from the bankruptcy proceeding" and does not depend upon any "substantial question of bankruptcy law." *See In re Ray*, 624 F.3d at 1135; *see also San Mateo I*, 294 F. Supp. 3d at 939; *Baltimore I*, 388 F. Supp. 3d at 570.

   Defendants also make the generalized claim that the People's Complaints involve "historical activities of . . . predecessor companies, subsidiaries, and companies that Defendants may have acquired or with which they may have merged," and therefore "many other Title 11

1   cases . . . may be related." NORs ¶ 68. Because all doubts must be resolved in favor of remand,

2   Defendants' vague allegation that there is a nexus between these cases and some bankruptcy that

3   may have occurred at some point in the past is inadequate to satisfy their burden to show

4   jurisdiction is proper. Any connection between these cases and "unspecified bankrupt entities" is

5   "entirely speculative" and cannot support jurisdiction. *See Boulder I*, 405 F. Supp. 3d at 980.

6        *Third*, even if bankruptcy removal jurisdiction otherwise existed here, this Court may

7   remand the case "on any equitable ground." 28 U.S.C. § 1452(b). Courts typically consider seven

8   factors in determining whether to exercise this "unusually broad grant of authority": "(1) the effect

9   of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state

10   law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness of the

11   action to the bankruptcy case; (6) any jury trial right; and (7) prejudice to plaintiffs from removal."

12   *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006); *see also In re McCarthy*,

13   230 B.R. 414, 417–18 (9th Cir. BAP 1999). Each of those equitable factors weighs in favor of

14   remand here. In *McCarthy*, for example, the court remanded on equitable grounds the plaintiff's

15   complaint alleging four state law claims case against a debtor and non-debtor, principally because,

16   as here, the state law claims "do not commonly arise in bankruptcy"—a fact that made the

17   equitable remand decision "easy." 230 B.R. at 416, 418; *see also In re Schwarz*, 09-CV- 5831-

18   EJD, 2012 WL 899331, at *2 (N.D. Cal. Mar. 15, 2012). For reach of these reasons, Defendants

19   have therefore failed to establish bankruptcy removal jurisdiction.

20   **V.   CONCLUSION**

21        For the foregoing reasons, the People request that these actions be remanded to the state

22   courts from which they were removed.

23     Dated: January 28, 2021         Respectfully submitted,

24

25                         **CITY OF OAKLAND**

26                         By: *Barbara J. Parker*

27                         BARBARA J. PARKER (State Bar #069722)
                      City Attorney

28                         MARIA BEE (State Bar #167716)

1    Chief Assistant City Attorney
2    ZOE M. SAVITSKY, (State Bar #281616)
     Supervising Deputy City Attorney
3    MALIA MCPHERSON (State Bar #313918)
     Deputy City Attorney
4    One Frank H. Ogawa Plaza, 6th Floor Oakland,
     California
5    Tel.: (510) 238-3601
     Fax: (510) 238-6500
6    mmcpherson@oaklandcityattorney.org

7    * Pursuant to Civ. L.R. 5-1(i)(3), the electronic
     filer has obtained approval from this signatory.
8

9    **CITY AND COUNTY OF SAN**
     **FRANCISCO**
10

11   By: *Matthew D. Goldberg*
     DENNIS J. HERRERA (State Bar #139669)
12   City Attorney
     RONALD P. FLYNN (State Bar #184186)
13   Chief Deputy City Attorney
     YVONNE R. MERÉ (State Bar #173594)
14   Chief of Complex and Affirmative Litigation
     ROBB W. KAPLA (State Bar #238896)
15   Deputy City Attorney
     MATTHEW D. GOLDBERG (State Bar
16   #240776)
     Deputy City Attorney
17

18   City Hall, Room 234
     1 Dr. Carlton B. Goodlett Place
19   San Francisco, California 94102-4602
     Tel.: (415) 554-4748
20   Fax: (415) 554-4715
     matthew.goldberg@sfcityatty.org
21

22   * Pursuant to Civ. L.R. 5-1(i)(3), the electronic
     filer has obtained approval from this signatory.
23

24   **SHER EDLING LLP**

25   VICTOR M. SHER (State Bar #96197)
     MATTHEW K. EDLING (State Bar #250940)
26   MARTIN D. QUIÑONES (State Bar #293318)
     ADAM M. SHAPIRO (State Bar #267429)
27   KATIE H. JONES (State Bar #300913)
     NICOLE E. TEIXEIRA (State Bar #305155)
28

THE PEOPLE'S NOTICE OF RENEWED MOTION AND MOTION; MEMORANDUM OF          23
POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND;
CASE NOS. 3:17-CV-6011-WHA AND 3:17-CV-6012-WHA

1
2
3
4
5
6

100 Montgomery St. Ste. 1410
San Francisco, CA 94104
Tel.: (628) 231-2500
vic@sheredling.com
matt@sheredling.com
marty@sheredling.com
adam@sheredling.com
katie@sheredling.com
nicole@sheredling.com

7

**ALTSHULER BERZON LLP**

8
9

MICHAEL RUBIN (State Bar #80618)
BARBARA J. CHISHOLM (State Bar
#224656)
CORINNE F. JOHNSON (State Bar #287385)

10
11
12
13

177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
mrubin@altber.com
bchisholm@altber.com
cjohnson@altber.com

14

*Attorneys for The People*

15
16
17
18
19
20
21
22
23
24
25
26
27
28